Acuity, A Mutual Insurance Company,
Plaintiff-Respondent,†

v.

Ross Glove Company, Defendant-Appellant,

Seirus Innovative Accessories, Inc., Defendant.

Court of Appeals

*No. 2011AP1464. Submitted on briefs January 24, 2012.*
*—Decided April 4, 2012.*

2012 WI App 70

(Also reported in 817 N.W.2d 455.)

† Petition for Review denied 9-17-12.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephanie E. Waldon* of *Rohde Dales LLP*, Sheboygan.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christine M. Rice* and *Alexandra L. Grimley* of *Simpson & Deardorff, S.C.*, Milwaukee.

Before Neubauer, P.J., Reilly and Gundrum, JJ.

¶ 1. NEUBAUER, P.J. Ross Glove Company appeals a declaratory judgment granted in favor of its insurer, Acuity, a Mutual Insurance Company. Ross Glove was the subject of trade dress infringement claims and requested that Acuity defend and indemnify it under the terms of its policy. Acuity was granted a declaratory judgment that its policy, specifically its "advertising injury" provision, does not afford coverage for the lawsuit brought against Ross Glove. We conclude that the circuit court erred. It is reasonable to infer that the complaint alleges injury arising from trade dress infringement in Ross Glove's advertisement. Acuity owes Ross Glove the duty to defend under its policy. Acuity's exclusion of coverage for knowing violations does not excuse that duty because the complaint seeks to hold Ross Glove liable for trade dress infringement without any showing of an intentional violation. We reverse the order for declaratory judgment and remand for further proceedings.

## BACKGROUND

¶ 2. Ross Glove is a Wisconsin corporation engaged in the manufacture of cold weather neck and face protectors. Ross Glove had a business relationship with Cabela's, Inc., a Delaware corporation. Cabela's offered for sale the products manufactured by Ross Glove. On May 13, 2009, Seirus Innovative Accessories, Inc., filed an action in the United States District Court for the Southern District of California[1] seeking damages from Cabela's and Ross Glove for alleged patent infringe-

---

[1] *Seirus Innovative Accessories, Inc. v. Cabela's, Inc.*, Case No. 09–CV-0102–JLS (S.D. Cal.).

ments and trade dress infringement based on four of the cold-weather headwear products. Seirus' amended complaint contains four claims for relief against Ross Glove, including three claims based on patent infringement and one claim based on unfair competition by trade dress infringement.[2]

¶ 3. The commercial general liability (CGL) insurance policy issued by Acuity to Ross Glove was in effect at the time of the alleged infringements. The policy provides coverage for any damages Ross Glove becomes legally obligated to pay due to advertising injury. In September 2009, Ross Glove notified Acuity of Seirus' claims and requested a defense and indemnity. Acuity accepted the tender of defense while reserving its right to dispute liability coverage.

¶ 4. In February 2010, Acuity filed a declaratory judgment complaint against Ross Glove, asserting that it had no obligation to defend, and therefore, no obligation to indemnify Ross Glove for Seirus' claims in the underlying action. According to Acuity, Seirus' complaint did not trigger an initial grant of coverage because the underlying claims did not allege that Ross Glove engaged in "advertising activity." Acuity further asserted that because the underlying claims alleged knowing, willful and intentional infringement, any arguable initial coverage would be excluded as a knowing violation of the rights of another. The court granted Acuity's motion for declaratory judgment on the grounds that the underlying complaint did not allege advertising by Ross Glove. Ross Glove appeals.

[2] *See Dogloo, Inc. v. Northern Ins. Co.*, 907 F. Supp. 1383, 1388 (C.D. Cal. 1995) (stating that a claim for unfair competition pursuant to § 43(a) of the Lanham Act is more commonly known as trade dress infringement).

## DISCUSSION

### *Standard of Review*

¶ 5. This declaratory judgment action involves the interpretation of an insurance policy. The rules of interpretation applicable to our review are as follows: "Words and phrases in insurance contracts are subject to the same rules of construction that apply to contracts generally; the primary objective in interpreting and construing a contract is to ascertain and carry out the true intent of the parties." *Fireman's Fund Ins. Co. v. Bradley Corp.*, 2003 WI 33, ¶ 16, 261 Wis. 2d 4, 660 N.W.2d 666. Where, as here, no extrinsic evidence is considered, the interpretation of an insurance policy is a question of law that we review de novo. *Id.*, ¶ 17.

¶ 6. Acuity's duty to defend is governed by the terms of its insurance policy. The well-established standard applicable to the duty to defend is summarized in *Fireman's Fund*:

> An insurer's duty to defend an insured is determined by comparing the allegations of the complaint to the terms of the insurance policy. "An insurer's duty to defend the insured in a third-party suit is predicated on allegations in a complaint which, if proven, would give rise to the possibility of recovery that falls under the terms and conditions of the insurance policy." The duty to defend is based solely on the allegations "contained within the four corners of the complaint," without resort to extrinsic facts or evidence.
>
> When comparing the allegations of a complaint to the terms of an insurance policy, the allegations in the complaint are construed liberally. The duty to defend is

necessarily broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage. We therefore "assume all reasonable inferences" in the allegations of a complaint and resolve any doubt regarding the duty to defend in favor of the insured.

In addition, a duty to defend is based upon the nature of the claim and not on the merits of the claim. "It is the nature of the claim alleged against the insured which is controlling even though the suit may be groundless, false or fraudulent." Consequently, "an insurer may have a clear duty to defend a claim that is utterly specious because, if it were meritorious, it would be covered." Finally, when an insurance policy provides coverage for even one claim made in a lawsuit, the insurer is obligated to defend the entire suit.

*Id.*, ¶¶ 19–21 (citations and footnotes omitted).

¶ 7. At issue here is the "advertising injury" provision in Acuity's policy which provides:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

 **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages . . . .

 . . . .

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation of Rights of Another**

*Personal and advertising injury* caused by or at

35

the direction of the insured with the knowledge that the act would violate the rights of another and would inflict *personal and advertising injury.*

. . . .

### i. Infringement of Copyright, Patent, Trademark or Trade Secret

*Personal and advertising injury* arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your *advertisement,* of copyright, trade dress or slogan.[3]

. . . .

## SECTION V – DEFINITIONS

**1.** *"Advertisement"* means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters . . . .

. . . .

**14.** *"Personal and advertising injury"* means injury, including consequential *bodily injury,* arising out of one or more of the following offenses:

. . . .

**g.** Infringing upon another's copyright, trade dress or slogan in your *advertisement.* (Emphases in original.)

Acuity contends that Seirus' claims do not fall under the "advertising injury" provisions of its policy.[4]

---

[3] Acuity's policy provides, "Throughout this policy the words 'you' and 'your' refer to the Named Insured," Ross Glove.

[4] Ross Glove is not seeking coverage under any other policy provision, nor is it seeking coverage for the patent infringement claims.

36

¶ 8. The allegations in Seirus' complaint relevant to Acuity's duty to defend are as follows:

**(C) *SEIRUS' TRADE DRESS IN PRODUCTS AND PACKAGING***

### (i) *SEIRUS' PRODUCT TRADE DRESS*

13. By virtue of the extensive use, sale and advertising by SEIRUS and others on behalf of SEIRUS, the shape, form and appearance (hereinafter the "SEIRUS PRODUCT TRADE DRESS") of the . . . "SEIRUS PROTECTOR LINE"[5], are inherently distinctive and have acquired distinctiveness and secondary meaning to signify SEIRUS as the manufacturer and the source of these goods.

### (ii) *SEIRUS' PACKAGING TRADE DRESS*

14. By virtue of the extensive use, sale and advertising by SEIRUS and others on behalf of SEIRUS, the shape, form and appearance in use of its packaging for the MASQUE face protector, (hereinafter the "SEIRUS PACKAGING TRADE DRESS"), has acquired secondary meaning in the market for cold-weather headgear.

---

[5] The complaint identifies the following products as the "SEIRUS PROTECTOR LINE": the *MASQUE*™ face protector; the *NEOFLEECE® COMFORT MASQUE*™ face protector; the *NEOFLEECE® EXTREME MASQUE*™ neck and face protector; the *NEOFLEECE® COMBO SCARF*™ face and neck protector; the *WEATHER SHIELD*™ face and neck protector; the *COMBO CLAVA®* head, face and neck protector; the *ULTRA CLAVA®* head, face and neck protector; the *MICRO COMBO HEADLINER*™ face, head and neck protector; *COMBO TNT HEADLINER*™ face, head and neck protector; and *NEOFLEECE® HEADLINER*™ head, face and neck protector." While Seirus' product trade dress infringement claim extends to the Protector Line (i.e., all of the identified products), its trade dress packaging infringement claim appears to be limited to its *MASQUE*™ product line.

. . . .

31. SEIRUS manufactures and sells, *inter alia,* the SEIRUS PROTECTOR LINE and by virtue of the extensive use, sale and advertising by SEIRUS, the associated SEIRUS PRODUCT TRADE DRESS and SEIRUS PACKAGING TRADE DRESS have become inherently distinctive and have acquired distinctiveness, secondary meaning, and sufficient fame to signify SEIRUS as the manufacturer and source.

32. Upon information and belief, Defendants have unlawfully and without license or right, copied, imitated, and otherwise created a collection of ACCUSED TRADE DRESS PRODUCTS. Defendants have also packaged some or all of the ACCUSED TRADE DRESS PRODUCTS, all of which emulate, imitate, palm off as, pass off as and copy the SEIRUS PRODUCT TRADE DRESS of the SEIRUS PROTECTOR LINE and SEIRUS PACKAGING TRADE DRESS of the *MASQUE*™ line to thereby emulate, imitate, palm off as, and pass off its products as members of the family of products that are the SEIRUS FACE PROTECTOR LINE and the SEIRUS *MASQUE*™ line. Such products of CABELA'S include the CABELA'S ZIP NECK GAITER; CABELA'S SOFT SHELL TECHNICAL BALACLAVA; CABELA'S NEOPRENE FACE MASK; and CABELA'S CONVERTIBLE HAT (the "ACCUSED TRADE DRESS PRODUCTS").

33. The activities of ROSS GLOVE in manufacturing the ACCUSED TRADE DRESS PRODUCTS, and of CABELA'S in advertising, selling and offering to sell each of the ACCUSED TRADE DRESS PRODUCTS, separately and together, is likely to cause confusion, mistake, and deception as to the source and origin thereof so that purchasers thereof and others will likely be confused and believe the ACCUSED TRADE DRESS PRODUCTS are part of the SEIRUS FACE PROTECTOR LINE and SEIRUS *MASQUE*™ line. In turn, De-

38

fendants are unfairly competing and misrepresenting their products to be those of SEIRUS in violation of 15 U.S.C. § 1125(a).

34. The activities of ROSS GLOVE in manufacturing, and of CABELA'S in advertising for sale, offering for sale, and selling the ACCUSED TRADE DRESS PRODUCTS, separately and together, constitute unlawful and tortious unfair competition, palming off and passing off, and misrepresentation as to the source of goods in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

35. SEIRUS believes it has suffered and continues to suffer lost sales and, in turn, damages as a direct result of the unlawful and unfair competition of CABELA'S and ROSS GLOVE. Under 15 U.S.C. § 1117, SEIRUS is entitled to damages, including lost profits and the costs of this action, to be shown at trial or upon an accounting.

36. On information and belief, CABELA'S and ROSS GLOVE's unfair competition in violation of 15 U.S.C. § 1125(a)(1) is willful and done with an intent to harm SEIRUS or in reckless disregard for the rights of SEIRUS such that SEIRUS is entitled to triple damages under 15 U.S.C. § 1117(b).

Acuity argues that Seirus' complaint does not allege trade dress infringement in Ross Glove's advertising, but rather limits Ross Glove's infringement to manufacturing. Ross Glove maintains, as it did before the circuit court, that "[b]y packaging its products and promoting to and soliciting Cabela's to sell its products, Ross Glove [called] attention to its products" and engaged in "advertising." For the reasons discussed below, we conclude that the complaint's allegations against Ross Glove give rise to a possibility of coverage and, thus, trigger Acuity's duty to defend.

39

*Acuity's Policy Affords an Initial Grant of Coverage to Ross Glove under its Advertising Injury Provision.*

¶ 9. In determining whether the allegations in the complaint give rise to the possibility of coverage under the advertising injury provision of the insurance policy, we make three inquiries: (1) Does Seirus' complaint state an offense covered under the advertising injury provision of Acuity's policy? (2) Does Seirus' complaint allege that Ross Glove engaged in advertising activity? (3) Does Seirus' complaint allege a causal connection between the injury alleged and Ross Glove's advertising activity? *See Fireman's Fund*, 261 Wis. 2d 4, ¶ 26.

*1. The Seirus Complaint States an Offense Covered under the "Advertising Injury" Provision of Acuity's Policy.*

¶ 10. Trade dress infringement in Ross Glove's advertisement is a covered "advertising injury" under the terms of Acuity's policy. The definition of "advertising injury" in Acuity's policy identifies as an offense "[i]nfringing upon another's copyright, trade dress or slogan in your *advertisement*." In its fourth claim, Seirus alleges trade dress infringement by Ross Glove in violation of the federal Lanham Act, 15 U.S.C.A. § 1125(a).[6]

---

[6] Trade dress infringement, as alleged by Seirus, is addressed by § 43 of the federal Lanham Act, codified at 15 U.S.C.A. § 1125. It provides in relevant part:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

¶ 11. Specifically, in paragraphs 13, 14 and 31, Seirus alleges the shape, form and appearance of its "PROTECTOR LINE" of products (all the identified products), as well as the packaging for the *MASQUE™* line of products, have acquired a distinctiveness and meaning designating Seirus as the manufacturer and source of the products and packaging.[7] In paragraph 32, Seirus alleges that Ross Glove and Cabela's created and packaged the infringing products, "all of which emulate[d], imitate[d], palm[ed] off as, pass[ed] off as and

---

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

. . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 125(a)(1)(A). As noted by the court in *Fireman's Fund Insurance Co. v. Bradley Corp.*, 2003 WI 33, ¶ 30, 261 Wis. 2d 4, 660 N.W.2d 666, § 43 of the Lanham Act was "designed to create a new federal remedy for the particular kind of unfair competition that results from false designation of origin or other false representation used in connection with the sale of a product." "The key to finding a violation under § 43 [of the Lanham Act] 'is a determination that the materials used by the defendant created a likelihood of confusion, deception or mistake on the part of the consuming public.' " *Fireman's Fund*, 261 Wis. 2d 4, ¶ 30 (citation omitted).

[7] "Trade dress is defined as a product's 'total image' and 'refers to the total image of a product, including features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.' " *Fireman's Fund*, 261 Wis. 2d 4, ¶ 28 (citations omitted). It encompasses the "dressing," or packaging, of the product and also the design of the product. *Id.* "The purpose of both trade dress and trademark is to enable a business to identify itself as the source of a given product through the adoption of some distinctive mark." *Id.*

cop[ied]" the trade dress of all Seirus' products and the packaging of Seirus' *MASQUE*™ line of products. In doing so, Ross Glove and Cabela's emulated, imitated, palmed off as, and passed off the infringing products as those of Seirus. In paragraphs 33 and 34, Seirus alleges that the activities of Ross Glove in manufacturing and of Cabela's in advertising, selling and offering to sell the infringing products, "separately and together," likely caused "confusion, mistake, and deception as to the source and origin" of the products. Seirus alleges that Ross Glove and Cabela's unfairly competed and misrepresented their products to be those of Seirus in violation of 15 U.S.C.A. § 1125(a). Seirus also alleges that the defendants palmed off and passed off, and misrepresented the source of the offending goods in violation of § 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a)(1). Seirus alleges it has suffered lost sales and, in turn, damages as a direct result of the unfair competition of Cabela's and Ross Glove. Thus, the complaint alleges trade dress infringement and, as discussed below, it alleges infringement in Ross Glove's advertisement.

*2. The Seirus Complaint Alleges that Ross Glove Engaged in Advertising Activity.*

¶ 12. Acuity's policy covers trade dress infringement in Ross Glove's advertisement. "Advertisement" is defined by the policy to include "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." We must therefore determine whether the complaint alleges that Ross Glove engaged in advertising activity or, consistent with the policy language, whether the

42

complaint alleges trade dress infringement in Ross Glove's advertisement of its products. We conclude that it does.

¶ 13. Seirus expressly identifies Ross Glove's product packaging as a source of infringing activity. It is well established that trade dress encompasses the packaging of a product. *Fireman's Fund*, 261 Wis. 2d 4, ¶ 28.[8] We first conclude that a reasonable insured would understand the undefined policy term "notice" to include the packaging. *Hirschhorn v. Auto-Owners Ins. Co.*, 2012 WI 20, ¶¶ 22, 28, 338 Wis. 2d 761, 809 N.W.2d 529 (we construe the undefined terms according to their plain and ordinary meaning as understood by a reasonable person in the position of the insured). "Notice" is defined as "[a] written or printed announcement." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1238 (3d ed. 1992); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED EDITION 1544 (1993). A common synonym of "notice" is "advertisement." *See* ROGET'S INTERNATIONAL THESAURUS 557.6 at 364 (1962); *see also* THE AMERICAN HERITAGE DICTIONARY 26 (defining "advertisement" as "[a] notice"). Seirus claims that the packaging of its products identifies it as the manufacturer. It is reasonable to infer that the complaint alleges that Ross Glove packaging, with its distinctive shape, form and appearance, is a "notice" that, for the purpose of attracting customers, misrepresents Ross Glove's packaged products as those of Seirus.

---

[8] *See also TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001) ("The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods.").

¶ 14. It is also reasonable to infer that Seirus alleges that the packaging was "published." The plain and ordinary meaning of "publish" as understood by a reasonable insured comports with nonlegal dictionary definitions. THE AMERICAN HERITAGE DICTIONARY 1464 defines "publish" as "[t]o bring to the public attention; announce." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1837 defines "publish" as "to place before the public (as through a mass medium): DISSEMINATE." *See also* BLACK'S LAW DICTIONARY 1268 (8th ed. 2004) ("publish" means "[t]o distribute copies (of a work) to the public").

¶ 15. The complaint seeks to hold Ross Glove liable for injury arising from the misrepresentation of the source of Ross Glove's products, which, separately and together with the activities of Cabela's in advertising and selling the packaged product, has resulted in confusion, mistake and deception as to the source and origin of the infringing packaged products. Not only is the packaging an advertising instrument, it is a source of Seirus' alleged injury—consumer confusion and lost sales. Here, to have (or potentially cause) consumer confusion, the infringing packaging must be published, i.e., it must be brought to the public's attention; placed before, distributed, disseminated or announced to, the public.[9] We think it clear that, under the policy definition of "advertisement," the complaint seeks to hold Ross Glove liable for infringement in its advertisement—a notice published to the general public about the product in an effort to attract customers.[10]

---

[9] Unlike the policy at issue in *R.C. Bigelow, Inc. v. Liberty Mutual Insurance Co.*, 287 F.3d 242, 245 (2d Cir. 2002), Acuity's policy does not define "advertising injury" so as to require that it arise out of *paid* announcements in the print or broadcast media.

[10] Even if we were to determine that either "notice" or "published" is ambiguous, any such ambiguity would be con-

44

¶ 16. In so concluding, we reject Acuity's suggestion that Ross Glove, as the manufacturer of the infringing packaged products, could not also be engaged in advertising. This is so regardless of whether Cabela's was also engaged in advertising. Acuity's policy defines "advertisement" as a notice that "is published" to the general public about your goods. It does not require that Ross Glove be the publisher, much less that it be the first, last or only, entity to publish; it simply requires that Ross Glove's notice be published. Again, Seirus seeks to hold Ross Glove liable for consumer confusion and lost sales arising out of trade dress infringement in Ross Glove's published advertisement—its packaging. As to our second inquiry under *Fireman's Fund*, we conclude that Seirus' complaint alleges that Ross Glove engaged in advertising activity.[11]

*3. The Seirus Complaint Alleges a Causal Connection between its Alleged Injury and Ross Glove's Advertising Activity.*

■■
¶ 17. Turning to the third inquiry under *Fireman's Fund*, we consider whether Seirus' complaint alleges a causal connection between its alleged injury and Ross Glove's advertising activity. *See Fireman's Fund*, 261 Wis. 2d 4, ¶ 26. The supreme court defined this inquiry as "whether, based on the allegations in the

strued against the insurer. *See Hirschhorn v. Auto-Owners Ins. Co.*, 2012 WI 20, ¶ 23, 338 Wis. 2d 761, 809 N.W.2d 529.

[11] We need not address whether any inferred solicitation by Ross Glove of Cabela's business gives rise to a potential coverage. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (if decision on one point disposes of appeal, appellate court need not decide other issues raised).

45

complaint, [the insured's] advertising of products contributed to the alleged injury of consumer confusion suffered by [the complainant]." *Id.*, ¶ 53. The advertisement does not need to be the only cause of the injury to trigger the duty to defend. Acuity's policy provides coverage for injury arising out of trade dress infringement in Ross Glove's advertisement.[12] Seirus contends that Ross Glove created packaging for products that misled the public as to their source of origin. The packaging is an advertisement, and Seirus alleges that it is a cause of its injury—confusion on the part of buyers as to the packaged products' origin and the resulting loss of sales. Where, as here, it is reasonable to infer that the insured's advertising activity contributed to the alleged injury of consumer confusion, the causal connection requirement is met. *Id.*; *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 248 (2nd Cir. 2002) (advertising that displays infringing packaging could contribute to the injury where the packaging causes consumer confusion).

■

¶ 18. In liberally construing Seirus' complaint and drawing reasonable inferences therefrom, we con clude it alleges both that Ross Glove engaged in activity covered under the advertising injury provision of the CGL insurance policy and that a causal connection

---

[12] This provision suggests that the injury must "arise out of" the advertisement. 3 NEW APPLEMAN LAW OF LIABILITY INSURANCE § 18.02(3)(b)(ii) (Matthew Bender, Rev. Ed. 2011). The provision at issue in *Fireman's Fund*, 261 Wis. 2d 4, ¶ 25, was "[a]dvertising injury caused by an offense committed in the course of advertising your goods, products or services." A treatise on insurance coverage opines that, while some courts recognize the distinction, the practical effect is the same. APPLEMAN, § 18.02(3)(b)(ii).

exists between Ross Glove's activities and Seirus' alleged injuries. Therefore, we further conclude that Acuity has a duty to defend Ross Glove in the underlying lawsuit brought by Seirus.[13]

### The "Knowing Violation" Exclusion in Acuity's Policy Does Not Preclude Coverage for the Allegations Related to Trade Dress Infringement.

■■

¶ 19. Acuity's policy excludes coverage for advertising injury if it was "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict *personal and advertising injury.*" In support of its motion for declaratory judgment, Acuity points to paragraph 36, in which Seirus alleges that Ross Glove's trade dress infringements were willful and done with the intent to cause harm, and seeks to recover treble damages under 15 U.S.C.A. § 1117(b). However, Acuity overlooks paragraph 35, in which Seirus alleges entitlement to damages, including lost profits, as a result of the nonintentional infringement under 15 U.S.C.A. § 1117(a).[14] Seirus does not allege any knowing violation as to either liability under the Lanham Act claims in paragraphs 31 through

---

[13] The policy also excludes intellectual property-related offenses from coverage, but makes clear that the exclusion does not apply to trade dress infringement in an advertisement. We have already determined that the complaint alleges that Ross Glove engaged in trade dress infringement in its advertisements, and thus this exception applies.

[14] 15 U.S.C.A. § 1117(a) permits the recovery of a defendant's profits gained through a violation of the Lanham Act, as well as damages sustained by the plaintiff and the costs of the action. Section 1117(b) sets forth the penalties for the intentional use of a counterfeit mark or designation and man-

34, or in seeking damages under § 1117(a). Indeed, intent is not a required element of trade dress infringement, but rather is required only to justify a request for enhanced damages or attorney fees. *See Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1152 n.6 (7th Cir. 1992) (the Lanham Act is a strict liability statute—there need not be an allegation of willfulness in order to succeed on the issue of liability). If even one covered offense is alleged in the underlying complaint, the insurance company has a duty to defend. Here, Seirus seeks to hold Ross Glove liable for trade dress infringement without any allegation, much less any required showing, of a knowing violation. Thus, the exclusion does not preclude Acuity's duty to defend. *See Doyle v. Engelke*, 219 Wis. 2d 277, 290–92, 580 N.W.2d 245 (1998) (intentional act exclusion did not apply to negligent conduct).

## CONCLUSION

¶ 20. We conclude that Seirus' complaint alleges trade dress infringement in Ross Glove's advertisement, which is a covered offense under Acuity's policy. We further conclude that the complaint seeks to hold Ross Glove liable for trade dress infringement without any allegation of a knowing and intentional violation and, therefore, the policy's knowing violation exclusion does not preclude coverage. Because Acuity has a duty to defend Ross Glove, we reverse the order for declaratory judgment and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded.

dates a trebling of profits or damages, whichever is greater, plus reasonable attorney's fees, unless the court finds "extenuating circumstances."