AIR ENGINEERING, INC., Plaintiff,

v.

INDUSTRIAL AIR POWER, LLC, Christopher Klemz and Matthew Kraus, Defendants-Appellants,

ACUITY, a Mutual Insurance Company, Intervening Defendant-Respondent.†

Court of Appeals

*No. 2012AP103. Submitted on briefs October 16, 2012. —Decided January 3, 2013.*

2013 WI App 18

(Also reported in 828 N.W.2d 565.)

† Petition for Review denied 6-14-13.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Patrick J. Schott* and *Kristin P. Fredrick* of *Schott, Bublitz & Engel, S.C.*, Brookfield.

On behalf of the intervening-defendant-respondent, the cause was submitted on the brief of *Christine M. Rice* and *Matthew J. Van Keulen* of *Simpson & Deardorff, S.C.*, Milwaukee.

Before Neubauer, P.J., Reilly and Gundrum, JJ.

¶ 1. NEUBAUER, P.J. This is a dispute regarding an insurance company's duty to defend under a commercial general liability (CGL) policy against allegations of advertising injury based on use of another's "advertising idea." In the underlying lawsuit, Air Engineering, Inc. sued Industrial Air Power, LLC alleging various causes of action based on Industrial's alleged misappropriation and use of Air Engineering's website source code and site content and an internet advertising system that was designed to place advertisements for the company on potential customers' computers. Acuity, Industrial's insurer, intervened and moved for a declaratory judgment that it had no obligation to defend, and therefore, no obligation to indemnify, Industrial against Air Engineering's claims in the underlying action. The circuit court granted declaratory judgment in favor of Acuity, concluding that the complaint did not allege facts that, if true, would give rise to a duty to defend against allegations of advertising injury. We hold that the complaint alleges facts sufficient to trigger the duty to defend and thus reverse.

## BACKGROUND

¶ 2. The complaint describes four systems that Air Engineering claims Industrial misappropriated and used in its own marketing: the Parts Purchasing System, the Customer Database System, the Internet Advertising System, and the Website Source Code. Air

14

Engineering refers to the first three systems collectively as the Proprietary Systems. For our purposes, the most important of these is the Internet Advertising System. We set forth the facts as alleged in Air Engineering's complaint, briefly describing the other three systems, then turn to a more detailed description of the Internet Advertising System.

¶ 3. Air Engineering buys air compressor replacement parts and related products and sells them to end-user customers. Over the years, Air Engineering developed techniques to determine how and where to purchase products and a database describing these techniques. Air Engineering refers to these techniques and database as the Parts Purchasing System. Air Engineering also developed a Customer Database System that enabled Air Engineering's salespeople to access customer information quickly and efficiently. Additionally, Air Engineering maintains a website for which it created source code, the Website Source Code.

¶ 4. Air Engineering also developed a system of targeting potential customers based on their online searches. As alleged in the complaint, the Internet Advertising System allowed Air Engineering to:

> (A) identify search terms that persons making Google searches for Replacement Products are likely to type as part of their search; (B) identify and purchase domain names which are more likely than others to appear early in the Search List when such terms are typed in; (C) design and place Google ads which will appear when such search terms are typed and which contain domain names leading to websites that provide information about [Air Engineering's] Replacement Products and about how to purchase such products; and (D) construct websites for such domain names, or construct websites with links to such domain names, which provide information about [Air Engineering's] Replacement Products and about how to purchase such products.

15

¶ 5. Air Engineering has kept the Proprietary Systems and the Website Source Code confidential. The Proprietary Systems and the Website Source Code have great economic value to Air Engineering and are essential to Air Engineering's business success and profitability because they allow Air Engineering to make its products more attractive to, and give Air Engineering enhanced access to, customers and potential customers through Google searches and in other respects. Much of the value of the Proprietary Systems and the Website Source Code would be lost if they were disclosed, as competitors could use them to enhance their competitive position with respect to Air Engineering.

¶ 6. Christopher Klemz and Matthew Kraus[1] were both employees of Air Engineering, were familiar with the Proprietary Systems and Website Source Code, and were advised that the systems were confidential. Klemz registered a website name for and incorporated Industrial while he was employed by Air Engineering.

¶ 7. As further alleged in the complaint, much of Industrial's website source code and content are identical to Air Engineering's Website Source Code and content. Klemz and Kraus used Air Engineering's Website Source Code and website content, without Air Engineering's permission, to construct and maintain Industrial's website. Klemz left Air Engineering in September 2008; Klaus left in February 2009. Both began work for Industrial. Shortly thereafter, two customers with whom Air Engineering had long-term relationships quit buying replacement parts from Air Engineering and started buying the same parts from Industrial—at lower prices. The only way for Industrial

---

[1] Klemz, Kraus, and Industrial Air Power, LLC are sometimes referred to collectively as Industrial.

16

to have offered the same range of products at prices parallel, albeit lower, than Air Engineering is for Industrial to have used the information contained in the Proprietary Systems and the Website Source Code. Industrial has used information from the Proprietary Systems to create and operate its business, to market its products and services, and to solicit business, including business from Air Engineering's present and prospective customers.

¶ 8. The complaint alleges six counts: trade secret misappropriation (alleging violation of Wis. Stat. § 134.90) (2009–10),[2] breach of contract, breach of fiduciary duty, conspiracy, intentional interference with contract, and unjust enrichment. The defendants denied all allegations and tendered their defense to Acuity, Industrial's CGL insurer. Acuity agreed to defend Industrial, reserving its right to deny coverage for uncovered claims. Acuity intervened, and the parties stipulated to bifurcate the proceedings, determining first whether Acuity had a duty to defend and staying proceedings on liability and indemnity. Acuity moved for declaratory judgment, asking the circuit court to declare that it had no duty to defend and therefore no duty to indemnify Industrial against Air Engineering's claims. The circuit court granted declaratory judgment, and Industrial appeals.

## DISCUSSION

### *Standard of Review*

¶ 9. A declaratory judgment determining insurance coverage involves the interpretation of an insur-

---

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

ance policy, which is a question of law that we review de novo. *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. "Words and phrases in insurance contracts are subject to the same rules of construction that apply to contracts generally; the primary objective in interpreting and construing a contract is to ascertain and carry out the true intent of the parties." *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶ 16, 261 Wis. 2d 4, 660 N.W.2d 666.

## Duty to Defend

¶ 10. We determine whether there is a duty to defend by comparing the allegations in the complaint with the terms of the policy. *Id.*, ¶ 19. The duty to defend is basely solely on the four corners of the complaint; no extrinsic facts or evidence are considered. *Id.* The insurer has a duty to defend when the allegations, if proven, give rise to the possibility of recovery under the terms of the policy. *Id.* "The duty to defend is necessarily broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage." *Id.*, ¶ 20. We "assume all reasonable inferences" from the facts as alleged in the complaint and resolve any doubt regarding the duty to defend in favor of the insured. *Id.* (citation omitted). Furthermore, the duty to defend is based on the facts alleged, not on the merits of the claim. *Id.*, ¶ 21. The legal label applied to the claim is not determinative; what matters is whether the conduct alleged in the complaint is arguably within a category of wrongdoing covered by the policy. *Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994) (applying Wisconsin law). Finally, if an

18

insurance policy provides coverage for even one claim made in a lawsuit, the insurer is obligated to defend the entire suit. *Fireman's Fund*, 261 Wis. 2d 4, ¶ 21.

¶ 11. Here, Industrial argues that Acuity has a duty to defend under the advertising injury portion of the Acuity CGL policy. To determine whether the allegations in the complaint give rise to a possibility of coverage under the advertising injury provision of the CGL policy, we ask three questions. First, does the complaint allege a covered offense under the advertising injury section of the policy? Second, does the complaint allege that Industrial engaged in advertising activity? Third, does the complaint allege a causal connection between Air Engineering's alleged injury and Industrial's advertising activity? *Acuity v. Ross Glove Co.*, 2012 WI App 70, ¶ 9, 344 Wis. 2d 29, 817 N.W.2d 455.

*Advertising Injury Under the CGL Policy*

¶ 12. Acuity's CGL policy provides, in relevant part, as follows.

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages . . . .

. . . .

## SECTION V - DEFINITIONS

**1.** *"Advertisement"* means a notice that is broadcast or published to the general public or specific

19

market segments about your [Industrial's] goods, products or services for the purpose of attracting customers or supporters . . . .

. . . .

14. *"Personal and advertising injury"* means injury, including consequential *bodily injury,* arising out of one or more of the following offenses:

. . . .

**f.** The use of another's advertising idea in your [Industrial's] *advertisement* . . . .

Industrial argues that the facts in the complaint allege advertising injury. Acuity contends that Air Engineering's claims do not trigger coverage under the policy. We conclude that the complaint alleges injury arising out of the covered offense of the "use of another's advertising idea in your advertisement."

### Coverage of Offenses Alleged

¶ 13. Section (f) of the Acuity policy defines an advertising injury as the use of another's advertising idea in the insured's advertisement. The facts alleged are that Air Engineering developed the Proprietary Systems, including the Internet Advertising System, to enable it to provide information about its products to potential purchasers. Further, the facts allege Industrial's use of the Proprietary Systems without Air Engineering's consent to market Industrial's products and services and to solicit business.

¶ 14. We must decide whether the alleged facts describe the "use of another's advertising idea in your advertisement." "Advertising idea" is not defined in the

policy, so we look to caselaw to find out what it means. In *Atlantic Mutual Insurance Co. v. Badger Medical Supply Co.*, 191 Wis. 2d 229, 528 N.W.2d 486 (Ct. App. 1995), General Medical claimed its former employee breached his restrictive covenant by using customer information to benefit his new employer, Badger Medical. *Id.* at 233–34. Badger Medical, the insured, argued that the employee's alleged misappropriation of his former employer's customer information caused a covered advertising injury because it was a misappropriation of an advertising idea. *Id.* at 234, 236. The court looked to two dictionary definitions of "advertising" and concluded that "advertising idea" was not ambiguous. *Id.* at 239. "An 'advertising idea' then, is an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage." *Id.* The court found that the allegations that the employee revealed confidential customer information did not trigger advertising injury coverage. *Id.* at 242.

¶ 15. *Atlantic Mutual* tells us that customer information is not an advertising idea; other jurisdictions provide examples of what is an advertising idea. In *Hyundai Motor America v. National Union Fire Insurance Co. of Pittsburgh, PA*, 600 F.3d 1092 (9th Cir. 2010), Orion sued Hyundai for patent infringement for using Orion's "build-your-own" vehicle feature on Hyundai's website. *Id.* at 1095–96. Orion's complaint described the feature as a "marketing method" or "marketing system," *id.* at 1098, which generates a customized product proposal for potential customers based on their submitted preferences, *id.* at 1095, 1099. After Hyundai's insurer denied coverage, Hyundai filed suit. *Id.* at 1095. The district court granted summary judg-

21

ment to the insurer, holding "patent infringement is not an 'advertising injury.' " *Id.* at 1097.

¶ 16. On appeal, the Ninth Circuit Court of Appeals, applying California law, reversed. *Id.* at 1104. Regarding whether the alleged offenses constituted misappropriation of an advertising idea, the court noted that "Orion patented a method of displaying information to the public at large for the purpose of facilitating sales, i.e., a method of advertising." *Id.* at 1100–01. The court distinguished the build-your-own feature from individualized solicitation directed at known customers, which was not covered, noting that "the [build-your-own] feature *is* widely distributed to the public at large, to millions of unknown web-browsing potential customers, even if the precise information conveyed to each user varies with user input." *Id.* at 1099–1100. Orion's patent infringement claim alleged misappropriation of an advertising idea. *Id.* at 1101; *see also DISH Network Corp. v. Arch Specialty Ins. Co.*, 659 F.3d 1010, 1021–22 (10th Cir. 2011) (applying Colorado law and holding that a telephone system conceivably allowing sales and up-sell purchase offers was a "product specifically designed, in part, for advertising purposes"); *Amazon.com Int'l, Inc. v. American Dynasty Surplus Lines Ins. Co.*, 85 P.3d 974, 977 (Wash. Ct. App. 2004) (applying Washington law to conclude that a patented website music-preview technology is an advertising technique that could constitute an advertising idea).

¶ 17. Here, Air Engineering alleges that it developed the Internet Advertising System to advertise its products to the public in order to facilitate sales. Industrial used that information to do the same. As we understand it from the complaint, Air Engineering's system recognizes relevant terms in a potential customer's online search and strategically directs select

22

advertisements to that customer, including purchased domain name links to product information. As in *Hyundai*, the information is tailored to the customer based on information furnished by the customer. Reading the complaint liberally, Air Engineering's system "is an idea for calling public attention to a product or business, especially by proclaiming desirable qualities," in this case, suitability to the customer's needs, "so as to increase sales or patronage." *Atlantic Mut.*, 191 Wis. 2d at 239. Industrial's use of the Internet Advertising System, as described in Air Engineering's complaint, is "use of another's advertising idea."

*Industrial's Advertising Activity*

¶ 18. The second question in our coverage analysis is whether the complaint alleges that Industrial engaged in advertising activity. The complaint alleges that Industrial used information contained in the Proprietary Systems, including the Internet Advertising System, and the Website Source Code to create and operate its business, market its products and services, and solicit business, including business from Air Engineering's present and prospective customers. We compare these allegations to the CGL policy definition of advertisement: "a notice . . . broadcast . . . to the general public or specific market segments about your goods, products or services for the purpose of attracting customers." *See also Ross Glove*, 344 Wis. 2d 29, ¶ 12 (looking to policy definition of advertisement to determine whether complaint alleges advertising activity). The CGL policy definition of advertisement also states:

> Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

23

¶ 19. The complaint alleges Industrial used Air Engineering's Proprietary Systems, which include the Internet Advertising System. The Internet Advertising System designs and places ads when certain search terms are entered, which ads contain domain names leading to information about available products and how to purchase such products. Liberally construing the allegations in the complaint, these ads give notice to potential customers about Industrial's goods, products, or services and are placed with the purpose of attracting customers. Therefore, using the Internet Advertising System to place these ads is advertising activity. Furthermore, these links are "about" Industrial's goods and products and therefore are potentially an advertisement under the website subsection of the policy definition. The complaint alleges that Industrial engaged in an advertising activity.

*Causal Connection Between*
*Advertising Activity and Advertising Injury*

¶ 20. Finally, we must determine if the complaint alleges a causal connection between Industrial's advertising activity and Air Engineering's advertising injury. The complaint alleges that Industrial used the Proprietary Systems, including the Internet Advertising System, to market products and services to potential customers. It further alleges that shortly after Kraus left Air Engineering for Industrial, two long-term customers left Air Engineering and entered into contracts with Industrial. The complaint alleges that Industrial has used confidential information obtained from Air Engineering "to create and operate [their] business; to market [their] products and services and solicit business . . . and to obtain business from [Air Engineering's] present and

24

prospective customers which [Air Engineering] would have received otherwise." Generally, the complaint alleges that Air Engineering has been injured by Industrial's actions in various respects, including "loss of good will, revenues and profits."

¶ 21. Our inquiry regarding the causal connection between the alleged advertising activity and the alleged advertising injury is "whether, based on the allegations in the complaint, [the insured's] advertising of products contributed to the alleged injury . . . suffered by [the complainant]." *Fireman's Fund*, 261 Wis. 2d 4, ¶ 53. "The advertisement does not need to be the only cause of the injury to trigger the duty to defend." *Ross Glove*, 344 Wis. 2d 29, ¶ 17. Air Engineering contends that Industrial used its advertising ideas to draw past and potential customers away, thus causing business loss to Air Engineering. Assuming Industrial used Air Engineering's advertising system to target potential customers, it is reasonable to infer that such usurped techniques did draw customers away from Air Engineering. The causal connection requirement is met.

¶ 22. Additionally, the complaint alleges that "much of [Industrial's] website source code is identical to the Website Source Code [and] [m]uch of the content of [Industrial's] website's content is identical to content of [Air Engineering's] website." Further, the complaint alleges that Industrial used Air Engineering's website content and Website Source Code to construct and maintain Industrial's website. Although our decision focuses on the allegations about the use of the Internet Advertising System, we note that this allegation concerning the use of the website content and Website Source Code also supports a duty to defend under the "use of another's advertising idea" definition of adver-

25

tising injury. Regarding the first question of the three-part test, whether the complaint alleges a covered offense, although the complaint does not explain what constitutes the "content" of the website, a reasonable reading of the complaint is that the content is or includes advertisement. The alleged use of another's identical advertisement must constitute the use of another's advertising idea in your advertisement. The complaint therefore alleges advertising injury. Questions two and three have been addressed above, as the complaint alleges advertising injury causally connected to Industrial's use of the Proprietary Systems, the Website Source Code, and the website content to market Industrial's products and services and solicit business.[3]

*Knowing Violation of Rights Exclusion*

¶ 23. Acuity argues that the "knowing violation" exclusion bars coverage. The CGL policy includes the following exclusion:

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation of Rights of Another**

*Personal and advertising injury* caused by or at the direction of the insured with the knowledge

---

[3] Industrial also argues that there is potential coverage under the trade dress portion of the definition of advertising injury. We need not address this argument because we have determined that there is a duty to defend under the "use of another's advertising idea" offense. *See Acuity v. Ross Glove Co.*, 2012 WI App 70, ¶ 6, 344 Wis. 2d 29, 817 N.W.2d 455 (once availability of coverage on one claim is determined, coverage on alternative claims need not be addressed).

that the act would violate the rights of another
and would inflict *personal and advertising injury.*

Acuity contends that this exclusion precludes the duty to defend because the complaint alleges that Industrial knew the misappropriated information was confidential, misappropriated it in a willful and malicious manner, and did so to obtain business from Air Engineering's past and prospective customers. Acuity states that each claim in the complaint includes an allegation of conduct that is "willful and malicious." Industrial contends that if any of the asserted claims can be proven without the knowledge that the act would violate the rights of another and inflict advertising injury, then the knowing violation exclusion does not apply.

¶ 24. *Ross Glove* is instructive with regard to the application of the "knowing violation" exclusion. There, Acuity argued that the exclusion barred coverage because the complainant had alleged that Ross Glove's conduct was "willful and done with the intent to cause harm." *Id.*, ¶ 19. But the complaint also sought damages for nonintentional infringement. *Id.* The court noted that "intent is not a required element of trade dress infringement, but rather is required only to justify a request for enhanced damages or attorney fees." *Id.* Therefore, the court concluded, the inclusion of an allegation of willful conduct in a complaint that otherwise states a covered claim without proving a "knowing violation" does not destroy potential coverage.

> If even one covered offense is alleged in the underlying complaint, the insurance company has a duty to defend. Here, [the complainant] seeks to hold Ross Glove liable for trade dress infringement without any allegation, much less any required showing, of a knowing violation. Thus, the exclusion does not preclude Acuity's duty to defend.

27

*Id.* This is true because the duty to defend is broader than the duty to indemnify. "The majority of jurisdictions hold that even if the underlying complaint alleges that the policyholder knew that it was committing a wrongful act, the insurance company still has a duty to defend if the policyholder could still be liable without a showing of intentional conduct." 3 NEW APPLEMAN LAW OF LIABILITY INSURANCE § 18.02[5][b] (Matthew Bender rev. ed. 2011).

¶ 25. Applying this rationale to the present case, Air Engineering states potentially covered claims that do not base liability on a showing of a knowing violation of another's rights and infliction of advertising injury. For example, the elements of breach of a fiduciary duty are: (1) the defendant owes a fiduciary duty to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach of the duty caused the plaintiff's damages. *Berner Cheese Corp. v. Krug*, 2008 WI 95, ¶ 40, 312 Wis. 2d 251, 752 N.W.2d 800. There is no requirement that the plaintiff prove a knowing violation of another's rights. A claim for unjust enrichment requires that the defendant know that he has received a benefit, *Staver v. Milwaukee County*, 2006 WI App 33, ¶ 24, 289 Wis. 2d 675, 712 N.W.2d 387, but it does not require a showing that the defendant knowingly acted to violate another's legal rights and inflict advertising injury. Finally, under WIS. STAT. § 134.90, trade secret misappropriation can occur when a person knows *or has reason to know* his or her actions are improper. WIS. STAT. § 134.90(2)(a), (b)2. The statute does not require actual knowledge or intent. There may be other exclusions in the policy that apply to these claims, and there may be other claims that could be proven without showing knowledge or intent. All we say is that there

are claims set forth in the complaint that survive the "knowing violation" exclusion. The inclusion in the complaint of an allegation of willful and malicious conduct does not relieve Acuity of its duty to defend.

## CONCLUSION

¶ 26. Air Engineering's complaint alleges advertising activity that is causally connected to an alleged advertising injury. Furthermore, because an insurer has a duty to defend a potentially covered claim, and Air Engineering's ability to prevail on a number of claims does not depend on whether Industrial acted with knowledge that it was violating the rights of Air Engineering and inflicting advertising injury, Acuity has a duty to defend Industrial. We therefore reverse the order for declaratory judgment and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded.