IN RE the PETITION OF COUNTRY SIDE RESTAURANT,
INC. for the Clerk of the Circuit Court of
Winnebago County to Accept a Portion of an
Award of Damages Made by the DOT
on 10/09/08 for Property located at
1145 Abraham Lane, Oshkosh, WI:

The LAMAR COMPANY, LLC, d/b/a Lamar Outdoor
Advertising, Petitioner-Appellant-Petitioner,

v.

COUNTRY SIDE RESTAURANT, INC.,
Respondent-Respondent.

Supreme Court

*No. 2010AP2023. Oral argument March 6, 2012.*
*—Decided May 4, 2012.*

2012 WI 46

(Also reported in 814 N.W.2d 159.)

336

For the petitioner-appellant-petitioner there were briefs filed by *Thomas S. Hornig* and *Kraig A. Byron* and *von Briesen & Roper, S.C.*, Madison, and oral argument by *Thomas S. Hornig*.

For the respondent-respondent, there was a brief filed by *Hugh R. Braun* and *Nicholas R. Diulio* and *Godfrey, Braun & Frazier, LLP*, Milwaukee, and oral argument by *Hugh R. Braun*.

An amicus curiae brief was filed by *Kathleen M. Batha*, assistant attorney general, for the Wisconsin Department of Transportation, and oral argument by *Kathleen M. Batha*.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J.   This is a review of an unpublished decision of the court of appeals, *Lamar Co., LLC v. Country Side Restaurant, Inc.*, No. 2010AP2023, unpublished slip op. (Wis. Ct. App. May 25, 2011), that affirmed an order by the

338

Winnebago County Circuit Court[1] disbursing to Country Side Restaurant, Inc. (Country Side) $120,000 on deposit with the Clerk of the Circuit Court of Winnebago County.

¶ 2.  Pursuant to its power of eminent domain, the Wisconsin Department of Transportation (DOT) acquired a 76,628 square foot parcel of land owned by Country Side, a portion of which Country Side leased to the Lamar Company, LLC (Lamar) for the purpose of constructing and maintaining a billboard. As compensation for the taking, the DOT issued to Country Side and Lamar an award of damages totaling $2,000,000. Country Side and Lamar agreed that all proceeds would be transferred to Country Side, save for $120,000 deposited with the Clerk of the Circuit Court of Winnebago County for eventual distribution. Thereafter, Lamar applied for and received from the DOT a relocation payment of $83,525.

¶ 3.  Country Side and Lamar were unable to agree on a division of the $120,000. Consequently, Lamar filed a claim for partition, seeking the full amount on deposit, plus interest. Country Side responded by petitioning the circuit court for an order disbursing to Country Side the full amount on deposit, plus interest.

¶ 4.  The circuit court granted Country Side's petition and ordered the $120,000 to be disbursed to Country Side. The circuit court determined that the DOT had already justly compensated Lamar for the value of its billboard and that Lamar had lost its right to seek a share of the award of damages issued to Country Side and Lamar by failing to join in Country

---

[1] The Honorable Karen L. Seifert presided.

Side's appeal of the award. The court of appeals affirmed, though on slightly different grounds.

¶ 5. We granted Lamar's petition for review and now reverse the decision of the court of appeals and remand the cause to the circuit court for further proceedings consistent with this opinion.

¶ 6. We hold that Lamar has not lost its right to seek a share of the award of damages issued to Country Side and Lamar, and therefore, the circuit court improperly dismissed Lamar's claim for partition. First, we conclude that Lamar did not lose its right to seek a share of the award of damages by failing to join in Country Side's appeal of the award. Second, we conclude that Lamar did not lose its right to bring a claim for partition by accepting payment from the DOT for relocation expenses. The DOT's payment for Lamar's relocation expenses is distinct from the DOT's award for the fair market value of the property taken. Lamar has a right to seek both.

## I. FACTUAL BACKGROUND
## AND PROCEDURAL POSTURE

¶ 7. In October 2008, as part of its plan to reconstruct Highway 41, the DOT acquired a 76,628 square foot parcel of land located in Oshkosh, Wisconsin and owned by Country Side. Country Side had leased a portion of its property to Lamar for the purpose of constructing and maintaining a billboard. The ten-year lease commenced on April 1, 2006, and provided for an annual rent of $5,400, payable in monthly installments of $450. Lamar's billboard was permitted by the DOT.[2]

---

[2] By order dated October 25, 2011, we granted the DOT's motion to take judicial notice of Lamar's permit.

¶ 8. The DOT's jurisdictional offer[3] was issued to both Country Side and Lamar and listed a purchase price of $2,000,000. The purchase price was allocated as $1,934,900 for "Loss of land, including improvements and fixtures actually being acquired" and $65,100 for "Other: Sign."

¶ 9. In his June 12, 2008, report, the DOT's appraiser, James Norby (Norby), clarified that $65,100 was the value of the permitted sign site, as opposed to the value of the billboard structure: "The purpose of the permitted sign site valuation is to determine the contributing value of the permitted sign site. The billboard structure is owned by Lamar Companies. Therefore, it is not included in this valuation. The land occupied by the structure is owned by [Country Side]."

¶ 10. The valuation of the permitted sign site was completed by Ronald Borree (Borree), also of the DOT, and attached to Norby's report as an addendum. Borree valued the permitted sign site at $65,000 and valued the billboard structure at $65,079.

¶ 11. On October 15, 2008, the DOT issued to Country Side and Lamar an award of damages[4] totaling

---

[3] *See* Wis. Stat. § 32.05(3) (2009–10). All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

Notice to the property owner of a jurisdictional offer is a jurisdictional requisite for the condemnor to proceed in condemnation. Wis. Stat. § 32.05(4). Pursuant to § 32.05(3), notice of a jurisdictional offer has eight necessary components, including, *inter alia,* a brief statement of the nature of the project for which the property is intended to be acquired, a description of the property and the interest therein sought to be taken, the proposed date of occupancy, and the amount of compensation offered.

[4] *See* Wis. Stat. § 32.05(7).

$2,000,000. By a single check dated October 9, 2008, the DOT paid to Country Side and Lamar $1,985,785.51, or $2,000,000 less $14,214.49 in prorated taxes.[5]

¶ 12. On November 7, 2008, Country Side petitioned the circuit court to accept deposit of $120,000 for the benefit of Country Side and Lamar, pursuant to Wis. Stat. § 32.05(7)(d). Counsel for Country Side averred that Country Side and Lamar had agreed to transfer to Country Side all but $120,000 of the award of damages. The parties requested the circuit court to accept deposit of the remaining $120,000 for eventual distribution by court order.

¶ 13. The circuit court granted Country Side's petition and ordered the $120,000 to be deposited with the clerk.

¶ 14. On December 5, 2008, pursuant to Wis. Stat. § 32.05(11), Country Side appealed to the circuit court, challenging the adequacy of the $2,000,000 award of damages.[6]

¶ 15. Lamar did not join in Country Side's appeal. However, by letter dated July 16, 2009, counsel for Lamar submitted to the DOT, *inter alia,* a completed "Relocation Claim – Application and Release" Form DT1527 (Form DT1527) and a "Payment Schedule Summary Worksheet" (Worksheet), claiming $83,525 in relocation expenses associated with its billboard.[7] By signing Form DT1527, Lamar "agree[d] to accept the

---

[5] *See* Wis. Stat. § 32.05(7)(d).

[6] Country Side's appeal under Wis. Stat. § 32.05(11), which has since been dismissed, is not before us.

[7] By order dated January 24, 2012, we granted the DOT's motion to take judicial notice of the July 16, 2009, letter from Lamar's counsel to the DOT and the attached Form DT1527 and Worksheet.

342

amounts as payment in full for the items claimed, and release the [DOT] and any public body, board or commission acting in its behalf, from any and all claims for damages arising through this project, for the listed items for which an amount is claimed." As detailed by the Worksheet, the claimed amount of $83,525 consisted of $75,175 for the in-place value of the billboard, i.e. the cost to build the billboard new; $2,500 for relocation expenses; and $5,850 for take-down cost. The Worksheet was signed by representatives from both Lamar and the DOT and contained the following release: "The reimbursement stated on this worksheet has been reviewed and agreed to by both parties. The sign owner or representative, by signing this document, waives any right to future claims for damage or loss involving this sign."

¶ 16.   Sometime thereafter, Lamar's counsel contacted the DOT to inquire about recovering the value of its billboard. In a letter dated September 22, 2009, the DOT, through Assistant Attorney General Kathleen M. Batha (Attorney Batha), responded by advising Lamar that only the value of the sign site, not the value of the structure itself, was included within the $2,000,000 award of damages:

> The $2 million payment to Country Side and Lamar covers all interests in the value of the sign site. For example, if you have a claim for leasehold value or permit value, etc., you will need to seek satisfaction from Country Side. The sign structure itself is treated as a tenant's fixture which is not included in the payment that has been made.

Attorney Batha noted, however, that Lamar was entitled to "moving expenses or depreciated reproduction

343

cost under [Wis. Admin. Code COMM § 202.64 (Mar. 1997)]."[8] Enclosed with Attorney Batha's letter was a copy of Form DT1527.

¶ 17. Country Side and Lamar were unable to agree on a division of the $120,000 on deposit with the clerk of the circuit court. Consequently, on November 4, 2009, Lamar filed a claim for partition under Wis. Stat. §§ 32.05(9)(a)3. and 820.01, seeking the full amount on deposit, plus interest. Lamar contended that it was entitled to the fair market value of its billboard and the bundle of rights that accompany it.

¶ 18. In response, on November 10, 2009, Country Side petitioned the circuit court for disbursement of the $120,000 to Country Side. In support of its petition, Country Side argued that the $65,100 allocated to the sign in the jurisdictional offer was the value of the permitted sign site which was owned by Country Side and in which Lamar had no interest. By contrast, Country Side alleged, Lamar owned and was entitled to compensation only for the billboard itself. Country Side maintained that Lamar had already been compensated for the value of the billboard, plus relocation expenses, through Lamar's receipt of $83,525.

¶ 19. The circuit court agreed and ordered the $120,000 to be disbursed to Country Side, thereby dismissing Lamar's claim for partition. Noting that Lamar did not join in Country Side's appeal of the award of damages, the circuit court determined that any right to the value of the permitted sign site belonged to Country Side. According to the circuit court, Lamar had already "made [its] deal with the DOT" for

---

[8] All subsequent references to the Wisconsin Administrative Code are to the March 1997 version unless otherwise indicated.

the value of the billboard and the costs of removal and relocation.

¶ 20. Lamar appealed, and the court of appeals affirmed, though on slightly different grounds. *Lamar,* No. 2010AP2023, unpublished slip op. Citing this court's decision in *Vivid, Inc. v. Fiedler,* 219 Wis. 2d 764, 580 N.W.2d 644 (1998), the court of appeals concluded that Wis. Stat. § 84.30(8)[9] provides the exclusive remedy for the taking of Lamar's property. *Lamar,* No. 2010AP2023, unpublished slip op., ¶¶ 9–15. The court of appeals determined that by signing the Worksheet, Lamar reached an agreement with the DOT on the amount of compensation payable to Lamar pursuant to § 84.30(8) and thus lost its right to bring future claims for compensation under Wis. Stat. § 32.05. *Id.,* ¶¶ 12–15.

¶ 21. Lamar petitioned this court for review, and the DOT moved for leave to file an amicus curiae brief in support of Lamar's petition for review. By order dated October 25, 2011, we granted both the DOT's motion and Lamar's petition for review.

## II. STANDARD OF REVIEW

¶ 22. The principal issue before us is whether the circuit court properly granted Country Side's petition

---

[9] Wisconsin Stat. § 84.30(8), "Agreed Price," provides:

Compensation required under subs. (6) and (7) shall be paid to the person entitled thereto. If the department and the owner reach agreement on the amount of compensation payable to such owner in respect to any removal or relocation, the department may pay such compensation to the owner and thereby require or terminate the owner's rights or interests by purchase. If the department and the owner do not reach agreement as to such amount of compensation, the department or owner may institute an action to have such compensation determined under s. 32.05.

for disbursement of the $120,000 to Country Side and thus properly dismissed Lamar's claim for partition under Wis. Stat. §§ 32.05(9)(a)3. and 820.01. In order to resolve that issue, we must determine whether Lamar lost its right to seek a share of the award of damages issued to Country Side and Lamar either by failing to join in Country Side's appeal of the award, as the circuit court concluded, or by signing the Worksheet, as the court of appeals concluded. Resolution of these questions involves the interpretation and application of Wis. Stat. §§ 32.05 and 84.30. Statutory interpretation and application are questions of law that we review de novo while benefitting from the analyses of the court of appeals and circuit court. *Heritage Farms, Inc. v. Markel Ins. Co.*, 2012 WI 26, ¶ 24, 339 Wis. 2d 125, 810 N.W.2d 465.

## III. ANALYSIS

¶ 23. We conclude that Lamar has not lost its right to seek a share of the award of damages issued to Country Side and Lamar, and therefore, the circuit court improperly dismissed Lamar's claim for partition under Wis. Stat. §§ 32.05(9)(a)3. and 820.01. We begin in Part A by providing the framework for determining just compensation when, as here, the government acquires real property jointly held by the owner of a permitted billboard and the owner of the underlying land. In Part B, we apply that framework more particularly to the instant case.

### A

¶ 24. Pursuant to both the Takings Clause of the Fifth Amendment of the United States Constitution and Article I, Section 13 of the Wisconsin Constitution,

346

private property shall not be taken for public use without just compensation. U.S. Const. amend. V;[10] Wis. Const. art. I, § 13.[11] In this case, it is undisputed that the DOT took for public use a parcel of land owned by Country Side and was thus required to provide just compensation therefor. It is further undisputed that since April 1, 2006, Country Side had leased a portion of its property to Lamar for the purpose of constructing and maintaining a billboard and that such billboard was permitted.[12] Under Wisconsin law, a lessee of more than one year is considered a joint owner of the leased property. *See Redevelopment Auth. of Green Bay v. Bee Frank, Inc.,* 120 Wis. 2d 402, 410–11, 355 N.W.2d 240 (1984); *Maxey v. Redevelopment Auth. of Racine,* 94 Wis. 2d 375, 387–88, 288 N.W.2d 794 (1980). Consequently, for purposes of condemnation law, "[i]t is well settled that a lessee has a property interest; and, when that interest is completely taken by a condemning authority, the lessee is entitled to compensation." *Id.,* 94 Wis. 2d at 400; *see also City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the U.S. v. Redevelopment*

[10] The Takings Clause of the Fifth Amendment of the United States Constitution, made applicable to the States through the Fourteenth Amendment, *see Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 536 (2005) (citing *Chicago, Burlington & Quincy R.R. Co. v. City of Chicago,* 166 U.S. 226 (1897)), provides that private property shall not "be taken for public use, without just compensation."

[11] Article I, Section 13 of the Wisconsin Constitution provides that "[t]he property of no person shall be taken for public use without just compensation therefor." *See also 260 N. 12th St., LLC v. DOT,* 2011 WI 103, ¶ 43, 338 Wis. 2d 34, 808 N.W.2d 372; *E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.,* 2010 WI 58, ¶ 21, 326 Wis. 2d 82, 785 N.W.2d 409.

[12] *See supra* note 2.

*Auth. of Milwaukee,* 2009 WI 84, ¶ 36, 319 Wis. 2d 553, 768 N.W.2d 749. Moreover, this court has already determined that a billboard permit, which confers a right or privilege to erect and operate a billboard on a designated piece of land, constitutes an interest in real property. *Adams Outdoor Adver., Ltd. v. City of Madison,* 2006 WI 104, ¶¶ 3, 64, 294 Wis. 2d 441, 717 N.W.2d 803; *see also* Jill S. Gelineau, *Valuation of Billboards in Condemnation,* 19 Prac. Real Est. Law., July 2003, at 23, 25 (explaining that a billboard owner's property interest may include three elements: a leased or fee interest in the land; an ownership interest in the billboard itself; and an interest in the permit that makes the billboard legal). Accordingly, in this case, there is no question that Lamar is entitled to just compensation: its property interest, derived from both its lease and permit, was completely taken by the DOT by virtue of the DOT's acquisition of the land on which Lamar's billboard was located.

■

¶ 25. Wisconsin Stat. § 32.09 outlines the rules governing the determination of just compensation. In the case of a total taking, like in this case, "the condemnor shall pay the fair market value of the property taken and shall be liable for the items in s. 32.19 if shown to exist." § 32.09(5)(a); *see also 260 N. 12th St., LLC v. DOT,* 2011 WI 103, ¶ 46, 338 Wis. 2d 34, 808 N.W.2d 372; *Vivid,* 219 Wis. 2d at 780 (lead op.). Included within the additional items payable under Wis. Stat. § 32.19 are relocation payments. § 32.19(3). As indicated by the legislature's use of the conjunctive word "and" in Wis. Stat. § 32.09(5)(a), the condemnor's payment of the fair market value of the property taken is distinct from the condemnor's liability for relocation payments under Wis. Stat. § 32.19(3). *See also City of*

*Racine v. Bassinger,* 163 Wis. 2d 1029, 1037 n.6, 473 N.W.2d 526 (Ct. App. 1991). If relocation expenses are shown to exist, the property owner is entitled to both the fair market value of the property taken and relocation payments. We discuss these in turn.

### 1. Fair Market Value of the Property Taken

¶ 26.   Fair market value is defined as "the amount for which the property could be sold in the market on a sale by an owner willing, but not compelled, to sell, and to a purchaser willing and able, but not obliged, to buy." *260 N. 12th St.,* 338 Wis. 2d 34, ¶ 47 (internal quotations omitted). The formula is no different when determining the value of a billboard: " 'Fair market value, as in any other type of case, is ordinarily measured as the price that the aggregate asset—the lease, permit and sign—would bring in the marketplace in a voluntary sale to a knowledgeable buyer, considering all relevant factors.' " *Vivid,* 219 Wis. 2d at 780 (lead op.) (quoting 8A *Nichols on Eminent Domain* § 23.04[1], at 23–47 (3d ed. 1997)); *see also Adams Outdoor Adver.,* 294 Wis. 2d 441, ¶ 88.

¶ 27.   As this court has recognized, the value of a billboard is derived largely from the billboard's location. *Adams Outdoor Adver.,* 294 Wis. 2d 441, ¶ 85; *Vivid,* 219 Wis. 2d at 781 (lead op.); *see also* Gelineau, *supra,* at 27 (observing that "[l]ocation is of prime importance to all real estate assets," which is "equally true of the interests in outdoor advertising signboards"). Indeed, "a billboard along a heavily traveled interstate highway can command a much greater price for the display of advertising than a billboard in a residential neighbor-

hood." *Adams Outdoor Adver.*, 294 Wis. 2d 441, ¶ 85. The value of the location, in turn, drives the value of the leasehold; simply stated, "[t]he better the location, the higher the rent." *Vivid*, 219 Wis. 2d at 804 (Bradley, J., concurring).[13] Likewise, because a billboard permit is valid only for a designated location and thus terminates once the billboard is moved, the primary value of a billboard permit appertains to the value of the designated location. *Adams Outdoor Adver.*, 294 Wis. 2d 441, ¶ 85; *see also* Gelineau, *supra,* at 27 ("A billboard permit only provides for a specific location, and relocation requires a new permit for the different location. Moreover, billboard value is site-specific. The same sign structure will have much more value next to a major highway as compared to a site a few miles from the highway.").

■■

¶ 28. When, as here, the property condemned is held by multiple owners, the condemnor is generally required to value the property according to the "unit rule." *See City of Milwaukee Post No. 2874*, 319 Wis. 2d 553, ¶¶ 39–41; *Spiegelberg v. State*, 2006 WI 75, ¶ 15, 291 Wis. 2d 601, 717 N.W.2d 641. Pursuant to the unit rule, the condemnor "provides compensation by paying the value of an undivided interest in the property rather than by paying the value of each owner's partial interest." *City of Milwaukee Post No. 2874*, 319 Wis. 2d 553, ¶ 39. In other words, the condemnor "determines the fair market value as if only one person owned the property." *Id.* When that value is determined, the con-

---

[13] Justice Bradley's concurring opinion in *Vivid, Inc. v. Fiedler,* 219 Wis. 2d 764, 580 N.W.2d 644 (1998), constitutes the majority opinion with respect to the methods of valuing billboards.

demnor makes a single payment which is then apportioned among the multiple owners. *Id.; see also Maxey,* 94 Wis. 2d at 401 ("[C]ondemnation awards should be based on the value of the property as a whole as if there were only one owner, and it is only after there is a determination of the taken property's total value that it is apportioned among the various interests in the property."). In Wisconsin, acceptance of the unit rule is "beyond question." *Green Bay Broad. Co. v. Redevelopment Auth. of Green Bay,* 116 Wis. 2d 1, 11, 342 N.W.2d 27 (1983). The unit rule helps to ensure that compensation is just both to the owners of the property taken and to the public that must pay the bill:

> The unit rule is designed to protect the interests of the condemnor and not to protect the interests of a condemnee. The condemnees, irrespective of their interests, are indeed constitutionally entitled to just compensation, but contracts between the owners of different interests in the land should not be permitted to result in a total sum which is in excess of the whole value of the undivided fee.

*Id.; see also City of Milwaukee Post No. 2874,* 319 Wis. 2d 553, ¶ 50.

## 2. Relocation Payments

¶ 29.   The legislature has expressly declared that it is in the public interest to fairly compensate those persons displaced by any public project by paying for not only the property acquired but also other losses described in Wis. Stat. § 32.19. *See* § 32.19(1). Relocation expenses are among the losses described in § 32.19. *See* § 32.19(3). Section 32.19(3) provides, in pertinent part:

> Any condemnor which proceeds with the acquisition of real and personal property for purposes of any

351

project for which the power of condemnation may be exercised, or undertakes a program or project that causes a person to be a displaced person, shall make fair and reasonable relocation payments to displaced persons, business concerns and farm operations . . . .

Relocation payments under § 32.19(3) are required for the following: the actual and reasonable expenses of moving the displaced person and his or her family, business or farm operation, including his or her personal property; the actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation; the actual reasonable expenses in searching for a replacement business or farm operation; and the actual reasonable expenses necessary to reestablish a business or farm operation. § 32.19(3)(a).

¶ 30. The standards for providing relocation payments under Wis. Stat. § 32.19(3) are outlined more specifically in Wis. Admin. Code Ch. COMM 202.[14] Wisconsin Admin. Code COMM § 202.001 reiterates that relocation payments are distinct from payment for property acquired: "Payments required by this chapter do not affect any right to seek compensation specified in ss. 32.01 through 32.18 and 32.28, Stats." In addition, relevant to this case, Chapter COMM 202 includes a section specific to outdoor advertising signs. Wisconsin

---

[14] Effective July 1, 2011, the legislature eliminated the Department of Commerce and transferred its functions to various other state agencies. *See* 2011 Wis. Act 32. Relevant to this case, the Department of Commerce's functions under Wis. Stat. § 32.19 were transferred to the Department of Administration. *See id.,* §§ 923–932. As a result, in December 2011, pursuant to its authority under Wis. Stat. § 13.92(4)(b)1., the Legislative Reference Bureau renumbered Wis. Admin. Code Ch. COMM 202 as Wis. Admin. Code Ch. ADM 92. *See* 672 Wis. Admin. Reg. 31 (Dec. 31, 2011).

Admin. Code COMM § 202.64(1) expressly provides that the displacing agency "shall pay a person displaced from an outdoor advertising sign for actual moving and related expense, direct loss of tangible personal property, and the actual expense in searching for a replacement site . . . ."

## B

¶ 31. The above framework is consistent with the DOT's conduct throughout this case. That Lamar had an interest in the property taken and was thus entitled to just compensation was recognized by the DOT through its jurisdictional offer and award of damages. The DOT issued a single jurisdictional offer of $2,000,000 to both Country Side and Lamar, expressly acknowledging that both Country Side and Lamar "own an interest" in the parcel of real property being acquired. Likewise, the DOT issued a single award of damages of $2,000,000 to both Country Side and Lamar,[15] expressly acknowledging that both Country Side and Lamar "have an interest" in the parcel of real

---

[15] In its brief in response to the DOT's amicus curiae brief, Country Side raises for the first time the issue of whether Lamar has standing in this case, given the fact that "Lamar Advertising of Milwaukee" was the entity named in the award of damages. As a general rule, we will not consider for the first time on appeal an issue not raised in the circuit court, particularly when, as here, the issue is undeveloped and involves questions of fact not brought to the circuit court's attention. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980).

In that same brief, relying on Wis. Stat. § 32.05(3) and (7), Country Side also argues for the first time that Lamar does not have a right to the award of damages because only those parties with an interest "of record" have a right to be named in the jurisdictional offer and award of damages, and Lamar's lease was never recorded. We disagree.

property being acquired. Finally, the DOT issued a single check, naming both Country Side and Lamar as payees, for the amount of the award less prorated taxes. The DOT's single payment was consistent with the unit rule. *See City of Milwaukee Post No. 2874,* 319 Wis. 2d 553, ¶ 39; *Spiegelberg,* 291 Wis. 2d 601, ¶ 15. That is, the DOT determined the fair market value of the entire property taken as if there were only one owner and made a single payment for that amount, anticipating that the payment would then be apportioned between Country Side and Lamar. *See City of Milwaukee Post No. 2874,* 319 Wis. 2d 553, ¶ 39; *Maxey,* 94 Wis. 2d at 401. Attorney Batha stated it succinctly in her letter to Lamar, informing Lamar that "[t]he $2 million payment to Country Side and Lamar covers all interests in the

Wisconsin Stat. § 32.05(3) provides, in relevant part, that the "[c]ondemnor shall send to *the owner, or one of the owners of record, . . .* a notice [of the jurisdictional offer]." (Emphasis added.) The plain language of § 32.05(3) indicates that the condemnor is required to send notice of the jurisdictional offer to either "the owner" of the property "or one of the owners of record." In other words, § 32.05(3) "does not require that service of jurisdictional offer and notice of hearing must be made only on an 'owner of record.' Service on the 'owner of record' is merely one of two alternatives." *Area Bd. of Vocational, Technical & Adult Educ., Dist. No. 2 v. Saltz,* 57 Wis. 2d 524, 204 N.W.2d 909 (1973).

Likewise, Wis. Stat. § 32.05(7)(a) provides, in relevant part, that the award of damages "*shall name all persons having an interest of record* in the property taken *and may name the other persons.*" (Emphasis added.) While the plain language of § 32.05(7)(a) requires the condemnor to name in the award of damages "all persons having an interest of record," it also gives the condemnor the option of naming in the award of damages "the other persons," i.e. those persons who do not have "an interest of record."

value of the sign site," and "if [Lamar] ha[s] a claim for leasehold value or permit value, etc., [then] [Lamar] will need to seek satisfaction from Country Side."

¶ 32.   Country Side and Lamar agreed to transfer to Country Side all but $120,000 of the award of damages.[16] That remaining $120,000 is the focus of this case.

¶ 33.   Neither the circuit court nor the court of appeals denied that Lamar had an interest in the property taken and was thus entitled to just compensation. Instead, albeit for different reasons, both courts concluded that Country Side was entitled to the full $120,000 on the grounds that Lamar lost its right to seek a share of the award of damages. The circuit court determined that Lamar lost its right to seek a share of the award of damages by failing to join in Country Side's appeal of the award. The court of appeals determined, and Country Side agrees,[17] that Lamar lost its

---

[16] Country Side petitioned, and the circuit court agreed, to accept deposit of the $120,000 pursuant to Wis. Stat. § 32.05(7)(d). We point out, however, that § 32.05(7)(d) was not the appropriate vehicle for Country Side's petition. Section 32.05(7)(d) sets forth the manner in which the condemnor may issue a check for the amount of the award of damages, less outstanding delinquent tax liens and less prorated taxes. Section 32.05(7)(d) provides that a check "shall *at the option of the condemnor* be mailed by certified mail to the owner or one of the owners of record or be deposited with the clerk of the circuit court of the county for the benefit of the persons named in the award." (Emphasis added.) In this case, the DOT evidently chose the first option. In any case, § 32.05(7)(d) speaks only to the condemnor's, not the owner's, ability to deposit the check with the clerk of the circuit court.

[17] In its briefing before this court, Country Side concedes that Lamar did not lose its right to seek a share of the award of damages by failing to join in Country Side's appeal of the award.

right to bring a claim for partition under Wis. Stat. §§ 32.05(9)(a)3. and 820.01 by signing the Worksheet and thereby reaching an agreement with the DOT on the amount of compensation payable to Lamar pursuant to Wis. Stat. § 84.30(8). We conclude that both the circuit court and court of appeals erred.

■■■

¶ 34.    First, we conclude that Lamar did not lose its right to seek a share of the award of damages by failing to join in Country Side's appeal of the award. Pursuant to Wis. Stat. § 32.05(11), Country Side elected to appeal directly to the circuit court, challenging the adequacy of the $2,000,000 award of damages. To be sure, Lamar had the option to join in Country Side's appeal. Section 32.05(11) plainly states: "Where one party in interest has appealed from the award, no other party in interest who has been served with notice of such appeal may take a separate appeal but *may join in the appeal by serving notice upon the condemnor and the appellant of that party's election to do so.*" (Emphasis added.) At the same time, however, § 32.05(11) expressly provides that "[t]he appeal shall not affect parties who have not joined in the appeal as herein provided." In other words, § 32.05(11) makes clear that a party in interest does not lose any rights by not joining in another party's appeal.

¶ 35.    In fact, Wis. Stat. § 32.05 provides a roadmap for cases in the very posture of Country Side and Lamar's—those involving multiple parties in interest, when one or more did not join in an appeal under § 32.05(11). Section 32.05(11) directs that subsection (9)(a) "shall govern" in cases involving multiple ownership or interests in lands taken. Section 32.05(9)(a)1., in turn, makes clear that the unit rule still applies in cases where all parties in interest have not joined in an appeal:

> Where all parties having an interest in the property taken do not join in an appeal, such fact shall not change the requirement that a finding of fair market value of the entire property taken and damages, if any, to the entire property taken, shall be made in determining compensation.

In such cases, § 32.05(9)(a)1. then instructs that the separate property interests "shall, in cases of dispute, be resolved by a separate partition action as set forth herein." Finally, § 32.05(9)(a)3. explains the procedure for a separate partition action, providing that when the parties in interest fail to agree on the division of an award of damages, "any of such owners or parties of interest may petition the circuit court for the county wherein the property is located for partition of the award moneys as provided in s. 820.01."[18]

¶ 36. The procedure set forth in Wis. Stat. § 32.05(9)(a)1. and 3. is precisely the procedure followed by Lamar in this case. Country Side elected to appeal from the award of damages under § 32.05(11); Lamar opted not to join in Country Side's appeal; and when Country Side and Lamar failed to reach an agreement on the division of the $120,000 that re-

---

[18] Wisconsin Stat. § 820.01, which governs the filing of a complaint and the trial in an action for partition of personal property, states the following:

> When any of the owners of personal property in common shall desire to have a division and they are unable to agree upon the same an action may be commenced for that purpose. Such action shall be tried by the court and if in its opinion a division of such property can be had without a sale thereof judgment shall be given accordingly and the property shall be divided, in accordance with the interest of the parties therein, and each owner shall be vested with the full title of the share awarded to the owner by the judgment in severalty. The court may appoint a receiver, enter an interlocutory or final judgment in order to do complete justice.

357

mained of the award, Lamar petitioned the circuit court for partition of the money, pursuant to §§ 32.05(9)(a)3. and 820.01. To put it simply, nothing more could have been expected of Lamar.

¶ 37. Second, contrary to the court of appeals' determination, we conclude that Lamar did not lose its right to bring a claim for partition under Wis. Stat. §§ 32.05(9)(a)3. and 820.01 by signing the Worksheet. As the DOT explains in its amicus curiae brief, the Worksheet and Form DT1527 document the relocation payment that Lamar received from the DOT. Form DT1527 indicates that Lamar applied for and received from the DOT a relocation payment of $83,525. As detailed by the Worksheet, the $83,525 consisted of $75,175 for the cost to build the billboard new; $2,500 for relocation expenses; and $5,850 for take-down cost. In other words, $83,525 was the cost that Lamar incurred in having to remove its billboard and rebuild it onto another site, i.e., Lamar's actual moving expenses under Wis. Stat. § 32.19(3)(a) and Wis. Admin. Code COMM § 202.64(1). As we explained in detail above, the DOT's $83,525 payment for Lamar's relocation expenses is distinct from the DOT's $2,000,000 award for the fair market value of the property taken. *See* Wis. Stat. §§ 32.09(5)(a), 32.19(1); Wis. Admin. Code COMM § 202.001. Lamar has a right to seek not only payment for relocation expenses but also its share of the award for the fair market value of the property taken.

¶ 38. It is true, as the court of appeals pointed out, that the Worksheet contains general release language. In particular, the Worksheet provides that Lamar, "by signing this document, waives any right to future claims for damage or loss involving this sign." However, as the DOT explains, the Worksheet must be

358

understood in conjunction with Form DT1527, a document submitted with and incorporated by the Worksheet. Form DT1527, also signed by Lamar, contains the following, more specific statement of release: "[Lamar] agree[s] to accept the amounts as payment in full *for the items claimed,* and *release the [DOT] and any public body, board or commission acting in its behalf,* from any and all claims for damages arising through this project, *for the listed items for which an amount is claimed.*" (Emphasis added.) That language is clear: by signing Form DT1527, Lamar agreed to accept $83,525 as payment in full for the items claimed and to release the DOT and any public body acting on the DOT's behalf from any further claims for the listed items. As aforementioned, the listed items were detailed in the Worksheet and related only to Lamar's actual moving expenses.

¶ 39.   Finally, the court of appeals and Country Side's reliance on Wis. Stat. § 84.30(8) is misplaced. The court of appeals concluded that § 84.30(8) provides the exclusive remedy for the taking of Lamar's property. *Lamar,* No. 2010AP2023, unpublished slip op., ¶¶ 9–15. According to the court of appeals, by signing the Worksheet, Lamar reached an agreement with the DOT on the amount of compensation payable to Lamar pursuant to § 84.30(8) and thus lost its right to bring future claims for compensation under Wis. Stat. § 32.05. *See id.,* ¶¶ 12–15. However, as this court held in *Vivid,* § 84.30 "is the exclusive remedy for determining just compensation for removed signs *that meet the criteria of § 84.30(6).*" 219 Wis. 2d at 776 (lead op.) (emphasis added); *see also id.* at 797 (Bradley, J., concurring). Section 84.30(6) provides, in relevant part, that the DOT "shall pay just compensation upon the removal or relocation on or after March 18, 1972, of any of the following

359

signs *which are not then in conformity with this section* . . . ." Pursuant to § 84.30(5)(a), "[s]igns outside of business areas which are lawfully in existence on March 18, 1972 but which do not conform to the requirements herein are declared nonconforming . . . ." The billboards at issue in *Vivid* were nonconforming and therefore met the criteria of § 84.30(6). 219 Wis. 2d at 777 (lead op.). By contrast, Lamar's billboard in the instant case was conforming. The billboard was permitted and thus recognized by the DOT as "conform[ing] to the requirements of Section 84.30 of the Wis. Statutes and to other Administrative Rules and Laws currently applicable and effective." Because Lamar's billboard was conforming, § 84.30(8) is simply not implicated in this case.

## IV. CONCLUSION

¶ 40.   We hold that Lamar has not lost its right to seek a share of the award of damages issued to Country Side and Lamar, and therefore, the circuit court improperly dismissed Lamar's claim for partition. First, we conclude that Lamar did not lose its right to seek a share of the award of damages by failing to join in Country Side's appeal of the award. Second, we conclude that Lamar did not lose its right to bring a claim for partition by accepting payment from the DOT for relocation expenses. The DOT's payment for Lamar's relocation expenses is distinct from the DOT's award for the fair market value of the property taken. Lamar has a right to seek both.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.