# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP909 |
| COMPLETE TITLE: | West Bend Mutual Insurance Company, <br>         Plaintiff-Respondent-Petitioner, <br>    v. <br> Ixthus Medical Supply, Inc. and Karl Kunstman, <br>         Defendants-Appellants, <br> Abbott Laboratories, Abbott Diabetes Care Inc. <br> and Abbott Diabetes Care Sales Corp., <br>         Defendants-Co-Appellants. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 381 Wis. 2d 472, 915 N.W.2d 456
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | February 28, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 11, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Racine |
|   JUDGE: | David W. Paulson |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | ZIEGLER, J. did not participate. |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the initial supreme court brief was filed by *Kris Bartos* and the reply brief was filed by *Danielle N. Rousset*, with whom on the briefs was *Jeffrey Leavell* and *Jeffrey Leavell, S.C.,* Racine. There was an oral argument by *Jeffrey L. Leavell*.

For the defendants-appellants, there was a brief filed by *Jason Pilmaier*, *Albert Solochek*, and *Howard*, *Solochek & Weber*, *S.C.,* Milwaukee. There was an oral argument by *Jason Pilmaier*.

For the defendants-co-appellants, there was a brief filed by *Michael P. Mayer*, *Linda T. Coberly*, and *Winstron & Strawn LLP*, Chicago, IL. There was an oral argument by *Linda T. Coberly*.

An amicus curiae brief was filed on behalf of Wisconsin Insurance Alliance by *James A. Friedman*, *Amber Coisman*, and *Godfrey & Kahn, S.C.*, Madison.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP909
(L.C. No. 2016CV1414)

STATE OF WISCONSIN      :      IN SUPREME COURT

**West Bend Mutual Insurance Company,**

    **Plaintiff-Respondent-Petitioner,**

    **v.**

**Ixthus Medical Supply, Inc. and Karl Kunstman,**

    **Defendants-Appellants,**

**Abbott Laboratories, Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corp.,**

    **Defendants-Co-Appellants.**

**FILED**

**FEB 28, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA GRASSL BRADLEY, J. In this duty to defend case, West Bend Mutual Insurance Company asks us to reverse the court of appeals' decision holding that the allegations in Abbott Laboratories' complaint against Ixthus Medical Supply, Inc. alleged a potentially covered advertising injury, and as a result, triggered West Bend's duty to defend under the

commercial general liability policy West Bend issued to Ixthus.[1] West Bend argues the court of appeals erred when it determined: (1) Abbott's complaint[2] alleged a causal connection between the advertising activity and injury; and (2) the knowing violation exclusion did not apply. West Bend further contends that the criminal acts exclusion applies, thereby removing any duty to defend, or alternatively that application of the fortuity doctrine, public policy, and the reasonable expectation of an insured each independently eliminates its duty to defend.

¶2 We hold the allegations in Abbott's complaint fall within the initial grant of coverage under the "personal and advertising injury liability" provision of the commercial general liability insurance policy West Bend issued to Ixthus. We further hold that neither the knowing violation nor the criminal acts exclusions apply to remove West Bend's duty to

---

[1] For ease of reference, we refer to West Bend Mutual Insurance Company as "West Bend." We refer to Abbott Laboratories, Abbott Diabetes Care Inc., and Abbott Diabetes Care Sales Corporation collectively as "Abbott." We refer to Ixthus Medical Supply, Inc. and Karl Kunstman collectively as "Ixthus."

The court of appeals opinion in this case was an unpublished per curiam decision. See West Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc., No. 2017AP909, unpublished slip op., (Wis. Ct. App. Mar. 28, 2018) (per curiam).

[2] All references to Abbott's "complaint" are to the Second Amended Complaint from the underlying lawsuit Abbott filed in federal district court in New York against Ixthus and many other defendants. See Abbott Laboratories, et.al. v. Adelphia Supply USA, et al., No. 15 Civ. 05826 (E.D.N.Y. Nov. 2015).

defend. Finally, we do not address West Bend's argument that the fortuity doctrine, public policy, and the reasonable expectation of an insured eliminate its duty to defend because West Bend failed to adequately raise or develop these contentions.[3] We affirm the decision of the court of appeals.

## I.  BACKGROUND

¶3 Ixthus is a medical supply company operating in Wisconsin. At all times relevant to this action, Ixthus was insured under a commercial general liability insurance ("CGL") policy with West Bend, which provided coverage for "personal and advertising injury." Specifically, the CGL policy provided:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . . .

---

[3] See State v. Dowdy, 2012 WI 12, ¶5, 338 Wis. 2d 565, 808 N.W.2d 691 ("As a general rule, issues not raised in the circuit court will not be considered for the first time on appeal."); Wirth v. Ehly, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980) ("It is the often repeated rule in this State that issues not raised or considered in the trial court will not be considered for the first time on appeal."); Raasch v. City of Milwaukee, 2008 WI App 54, ¶8, 310 Wis. 2d 230, 750 N.W.2d 492 (appellate court justified in rejecting undeveloped arguments).

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

"SECTION V—DEFINITIONS" of the CGL policy defines "advertisement" and "personal and advertising injury" as:

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

. . . .

14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

. . . .

f. The use of another's advertising idea in your advertisement," or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

Under "COVERAGE B," the CGL policy contains exclusions for both "Knowing Violation of Rights of Another" and "Criminal Acts":

2. Exclusions

This insurance does not apply to:

a. Knowing Violation of Rights of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

. . . .

d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

¶4  Abbott is a health care company that manufactures and sells blood glucose test strips in both the domestic and international markets.  Abbott's strips are trademarked under the name "FreeStyle."  The test strips are functionally identical regardless of the intended market, but the labeling and instructional inserts as well as price and available rebates are substantially different between the domestic and international packaged boxes.  For a variety of reasons, Abbott sells test strips for use in international markets at a much lower cost.

¶5  In November 2015, Abbott filed a lawsuit in New York federal court against Ixthus and over 100 other defendants asserting thirteen federal statutory and common law claims for relief based on its belief that the defendants were "import[ing], advertis[ing] and subsequent[ly] distribut[ing]" boxes of Abbott's international test strips in the United States.  The thirteen claims alleged were:  (1) Federal Trademark Infringement under Section 32 of the Lanham Act; 15 U.S.C. § 1114(1); (2) Federal Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(i)(A); (3) Common

5

Law Unfair Competition (New York law); (4) Federal Trademark Dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (5) State Law (New York) Trademark Dilution; (6) State Law (New York) Deceptive Business Practices; (7) Unjust Enrichment; (8) Violation of Federal RICO, 18 U.S.C. § 1962(c); (9) Conspiracy to Violate Federal RICO, 18 U.S.C. § 1962(d); (10) Importation of Goods Bearing Infringing Marks under 15 U.S.C. § 1124; (11) Fraud and Fraudulent Inducement; (12) Aiding and Abetting Fraud; and (13) Contributory Trademark Infringement.[4]

¶6 Upon being served, Ixthus tendered its defense to West Bend. In a March 2016 letter to Ixthus, West Bend denied Ixthus's tender, and explained why it took the position that the Abbott lawsuit was not covered by the CGL policy. In August 2016, West Bend filed a complaint in the circuit court seeking a declaratory judgment that West Bend had no duty to defend or indemnify Ixthus in Abbott's lawsuit. In March 2017, West Bend filed a motion for summary judgment. The circuit court granted West Bend's motion, concluding that although the allegations in Abbott's complaint fell within the initial grant of coverage, the knowing violation exclusion applied, thereby eliminating any duty West Bend had to defend Ixthus.[5]

---

[4] It is undisputed that the federal district court dismissed the two RICO claims and the unjust enrichment claim, leaving ten alleged claims.

[5] The Honorable David W. Paulson of Racine County Circuit Court presiding.

¶7 Both Ixthus and Abbott appealed to the court of appeals, which reversed the circuit court's decision. The court of appeals agreed with the circuit court that the allegations in Abbott's complaint fell within the initial grant of coverage, but disagreed with the circuit court as to the applicability of the knowing violation exclusion. See West Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc., No. 2017AP909, unpublished slip op., ¶¶10, 12-14 (Wis. Ct. App. Mar. 28, 2018) (per curiam). The court of appeals concluded the knowing violation exclusion did not apply because several of the claims alleged in the complaint could be established without having to prove Ixthus's actions were intentional; therefore, the court of appeals held that the complaint asserted potentially covered claims not consumed by the knowing violation exclusion. Id. Accordingly, the court of appeals concluded West Bend had a duty to defend Ixthus. Id., ¶20.

¶8 West Bend petitioned for review by this court, which we granted.

## II. STANDARD OF REVIEW

¶9 "We independently review a grant of summary judgment using the same methodology of the circuit court and the court of appeals." Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co., 2016 WI 54, ¶11, 369 Wis. 2d 607, 881 N.W.2d 285. "Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to

7

judgment as a matter of law." Id. (citing Wis. Stat. § 802.08(2) (2013-14)).[6] Declaratory judgments determining whether an insurer has a duty to defend require interpretation of the insurance policy, which also presents questions of law reviewed de novo. Water Well Sols. Serv. Grp., 369 Wis. 2d 607, ¶12; Air Eng'g, Inc. v. Industrial Air Power, LLC, 2013 WI App 18, ¶9, 346 Wis. 2d 9, 828 N.W.2d 565.[7]

### III. ANALYSIS

A. General Insurance Principles——Advertising Injury

¶10 The sole issue presented is whether West Bend has the duty to defend its insured, Ixthus, under the terms of the CGL policy——specifically the "Personal and Advertising Injury Liability" provision. In assessing whether a duty to defend exists, we "compare the four corners of the underlying complaint to the terms of the entire insurance policy." Water Well Sols. Serv. Grp., 369 Wis. 2d 607, ¶15. In doing so, "a court must liberally construe the allegations contained in the underlying complaint, assume all reasonable inferences from the allegations made in the complaint, and resolve any ambiguity in the policy

---

[6] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[7] The final order from the circuit court both "adjudged and declared" that West Bend had no duty to defend. This judgment followed West Bend's motion for summary judgment within a declaratory judgment action. The circuit court merged the summary judgment and declaratory judgment into a single order, granting West Bend's summary judgment motion by issuing a declaration.

terms in favor of the insured." Id. The purpose of the analysis is to determine whether the allegations in the complaint contain any claims, which if proven true, would be covered by the policy. See id., ¶¶16-17 & n.11. Stated otherwise, if there are any potentially covered claims——any allegations in the complaint that "give rise to the possibility of coverage"——the insurer has a duty to defend. See Fireman's Fund Ins. Co. v. Bradley Corp., 2003 WI 33, ¶¶19, 26, 261 Wis. 2d 4, 660 N.W.2d 666. The duty to defend is "necessarily broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage." Id., ¶20.

¶11 We use a three-step process in duty-to-defend cases:

(1) "First, a reviewing court determines whether the policy language grants initial coverage for the allegations set forth in the complaint. If the allegations set forth in the complaint do not fall within an initial grant of coverage, the inquiry ends."

(2) Second, "if the allegations fall within an initial grant of coverage, the court next considers whether any coverage exclusions in the policy apply."

(3) Third, "[i]f any exclusion applies, the court next considers whether an exception to the exclusion applies to restore coverage."

Water Well Sols. Serv. Grp., 369 Wis. 2d 607, ¶16 (internal citations omitted).

¶12 Additionally, in analyzing the first step of the duty-to-defend analysis when an insured seeks coverage under the advertising provision of a CGL policy, we ask three questions to

9

determine whether the allegations in the complaint fall under the initial grant of coverage. See Acuity v. Bagadia, 2008 WI 62, ¶16, 310 Wis. 2d 197, 750 N.W.2d 817; Fireman's Fund Ins. Co., 261 Wis. 2d 4, ¶26; see also Air Eng'g, Inc., 346 Wis. 2d 9, ¶11; Acuity v. Ross Glove Co., 2012 WI App 70, ¶9, 344 Wis. 2d 29, 817 N.W.2d 455. This three-question test, unique to advertising injury cases, assesses whether the allegations in a complaint "give rise to the possibility of coverage under the CGL insurance polic[y's] advertising injury provision." Fireman's Fund Ins. Co., 261 Wis. 2d 4, ¶26. The three questions are: (1) Does the complaint allege a covered offense under the advertising injury provision? (2) Does the complaint allege that the insured engaged in advertising activity? and (3) Does the complaint allege a causal connection between the plaintiff's alleged injury and the insured's advertising activity? Id. Answering yes to all three questions completes the first step in the duty-to-defend analysis, the policy provides an initial grant of coverage, and the court proceeds to the second and third steps in the process.

¶13 The second part of the duty-to-defend analysis involves determining whether any of the insurance policy's exclusions apply. Water Well Sols. Serv. Grp., 369 Wis. 2d 607, ¶16. "Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain." American Family Mut. Ins. Co. v. American Girl, Inc., 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65. Only if a policy exclusion removes coverage does the court proceed to the third step of the duty-to-defend

10

analysis, which entails consideration of whether an exception to the exclusion restores coverage. Water Well Sols. Serv. Grp., 369 Wis. 2d 607, ¶16.

¶14 "If the policy, considered in its entirety, provides coverage for at least one of the claims in the underlying suit, the insurer has a duty to defend its insured on all the claims alleged in the entire suit." Water Well Sols. Serv. Grp., 369 Wis. 2d 607, ¶16. Stated otherwise, if even one covered offense alleged in the underlying complaint, if proven, would give rise to recovery under the terms of the policy, the insurance company has a duty to defend. Id.; Fireman's Fund Ins. Co., 261 Wis. 2d 4, ¶21; Air Eng'g, Inc., 346 Wis. 2d 9, ¶10; Ross Glove Co., 344 Wis. 2d 29, ¶19.

## B. Application

¶15 West Bend argues: (1) the complaint does not allege a causal connection and (2) even if it does, exclusions in the policy apply to eliminate its duty to defend. Because West Bend does not challenge the court of appeals' answers to the first or second questions of the advertising injury test, we need not specifically analyze whether the complaint alleges a covered offense under the advertising injury provision or whether the complaint alleges that the insured engaged in advertising activity. The court of appeals correctly held that the complaint sufficiently alleged both a covered offense and that Ixthus engaged in advertising activity. We adopt the court of

11

appeals' analysis on those two questions.[8]  See West Bend Mut. Ins. Co., No. 2017AP909, unpublished slip op., ¶¶12-13.

1. Advertising Injury Coverage——Causal Connection

¶16 West Bend asserts the complaint lacks any allegations suggesting a causal connection between Abbott's injury and Ixthus's actions.  Specifically, West Bend argues the complaint does not allege any advertising activity by Ixthus that caused injury to Abbott.  Instead, West Bend insists that the allegations in the complaint against Ixthus focused on importation and distribution, not advertising.  Therefore, West Bend says the complaint's allegations as to Ixthus do not fall within the initial grant of coverage under the insurance policy's advertising provision.  We reject West Bend's contentions and hold the complaint sufficiently alleges the required causal connection.

---

[8] The court of appeals concluded both that Abbott's complaint alleged a covered offense under the advertising provision and that Ixthus engaged in an advertising activity:

> [T]he complaint alleges a covered offense because it alleges that Abbott suffered an advertising injury caused by an offense arising out of Ixthus's business. . . . The complaint alleges that the test strips are functionally the same whether for domestic or international sale but that the diverted ones are not labeled to comply with FDA requirements and that there are numerous material differences between packaging intended for international and domestic markets. Packaging itself is an advertisement.

See West Bend Mut. Ins. Co., No. 2017AP909, unpublished slip op., ¶¶12-13.

¶17 The test for whether a causal connection has been sufficiently alleged focuses not on "whether 'the injury <u>could have</u> taken place without the advertising,'" but whether the allegations sufficiently assert that "the advertising did in fact <u>contribute materially</u> to the injury." <u>Fireman's Fund Ins. Co.</u>, 261 Wis. 2d 4, ¶52 (quoting <u>R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.</u>, 287 F.2d 242, 248 (2d Cir. 2002) (citations omitted)). With this causation test in mind, we examine the complaint's allegations relevant to causation.

¶18 First, in paragraphs 5 and 6, the complaint alleges that the "Defendants" "caused——and continue to cause——Abbott to pay out, wrongfully, millions of dollars in rebates." Second, in paragraph 15, the complaint alleges:

> Defendants' unauthorized importation, advertisement and subsequent distribution causes, or is likely to cause, consumer confusion, mistake, and deception to the detriment of Abbott . . . . When such patients encounter the diverted international FreeStyle test strips, which bear certain of Abbott's trademarks but which are materially different from what U.S. patients expect, they are likely to be confused and, indeed, disappointed. . . . And the advertisement and sales of diverted international FreeStyle test strips cause great damage to Abbott and the goodwill of Abbott's valuable trademarks.

Third, in paragraph 385, the complaint alleges: "Using Abbott's trademarks and trade dress, Defendants advertise to consumers and the marketplace their ability and willingness to sell FreeStyle test strips. These advertisements are made through, inter alia, websites, emails, facsimiles, point-of-sale displays and other media."

13

¶19 West Bend admits that the complaint's references to "Defendants" include Ixthus, but contends that Ixthus was not really an "advertising" defendant——but instead a "distributing" defendant who did not advertise or sell products directly to end users. As a result, West Bend argues that these causation paragraphs are insufficient to connect Ixthus's activity to the coverage afforded in the advertising provision of the CGL policy. West Bend's post-hoc spin on these causation paragraphs cannot eliminate coverage at the duty-to-defend stage. The insurer in Ross Glove Co. advanced a similar argument in that case, suggesting that the manufacturer of infringing packaged products could not also be viewed as having advertised those goods. The court of appeals rightly rejected this argument, concluding that the complaint alleged the manufacturer engaged in covered advertising activity because its packaging constituted a "published advertisement" notwithstanding the advertising activity of other defendants in the case. Ross Glove Co., 344 Wis. 2d 29, ¶16. Just like the manufacturer in Ross Glove Co., Ixthus need not be "the first, last or only, entity" alleged to advertise in order to be engaged in covered advertising activity. Id.

¶20 The allegations in Abbott's complaint very plainly allege that Ixthus, as a "Defendant," engaged in advertising that caused substantial injury to Abbott. Fleshing out the factual allegations at trial may affect indemnification under the policy, but at the duty-to-defend stage, we liberally construe the allegations in the complaint, and make all

14

reasonable inferences from the allegations. See Water Well Sols. Serv. Grp., 369 Wis. 2d 607, ¶15. Further, "advertising need not be the sole cause of harm. Rather, the advertising activity must merely 'contribute materially' to the harm." Bagadia, 310 Wis. 2d 197, ¶50 (emphasis added; citation omitted).

¶21 We conclude the allegations in the complaint are sufficient to satisfy the test for causation. The complaint says the "Defendants" (including Ixthus) engaged in advertising activity that caused a variety of injuries to Abbott. The complaint alleges the defendants used Abbott's trademarks and trade dress in advertising to consumers and the marketplace through websites, emails, facsimiles, point-of-sale displays and other media. The complaint alleges the defendants caused a variety of serious injuries to Abbott including loss of millions of dollars in rebates, great damage to Abbott's goodwill and valuable trademarks, and consumer confusion, mistake, and disappointment. Consumer confusion alone satisfies the "contribute materially" causation test. See id., ¶56 ("Advertising activity can contribute materially to the trademark infringement if the advertising activity likely creates consumer confusion.").

¶22 The third question in the advertising-injury test on causation undoubtedly must be answered affirmatively: the complaint alleges a causal connection between Abbott's alleged injury and Ixthus's advertising activity. Given the allegations in the complaint, it is reasonable to infer that Ixthus's

15

alleged advertising activity contributed materially to Abbott's alleged injuries.  Accordingly, the allegations in the complaint fall within the initial grant of coverage.

### 2.  Exclusions

¶23  Having concluded the allegations in the complaint fall within the initial grant of coverage under the personal and advertising provision of the CGL policy, we move to the second step in the duty-to-defend analysis to determine whether any of the exclusions in the CGL policy apply to eliminate West Bend's duty to defend Ixthus.

¶24  West Bend's policy contains two exclusions it believes applies:  (1) knowing violation and (2) criminal acts.  We address each in turn.

### a. Knowing Violation

¶25  West Bend argues the knowing violation exclusion applies to preclude its duty to defend because the complaint alleges Ixthus acted intentionally and with knowledge that it was defrauding Abbott by buying international test strips at the lower price and selling them domestically to increase profit. West Bend points to the repeated allegations in the complaint that the defendants knew what they were doing and that Ixthus had done this before.

¶26  The knowing violation exclusion in Ixthus's CGL policy says:

This insurance [meaning the coverage for personal and advertising injury] does not apply to:

a. Knowing Violation of Rights Of Another

16

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

¶27 The knowing violation exclusion has eluded review in this court, but our court of appeals has considered its application. In Acuity v. Ross Glove Co., 344 Wis. 2d 29, the court of appeals considered whether the knowing violation exclusion in Acuity's CGL policy with Ross Glove Company precluded coverage for advertising injury alleged in a third-party complaint against Ross Glove for "alleged patent infringements and trade dress infringement." Id., ¶¶1-2. Acuity argued the exclusion applied based on allegations in the complaint that Ross Glove's actions were "willful and done with the intent to cause harm." Id., ¶19. The court of appeals held the exclusion did not preclude Acuity's duty to defend because the complaint also alleged liability under the Lanham Act, a strict liability statute, where "intent is not a required element of trade dress infringement, but rather is required only to justify a request for enhanced damages or attorney fees." Id. Applying the rule that when "even one covered offense is alleged in the underlying complaint, the insurance company has a duty to defend" the court of appeals held the exclusion did not preclude coverage. Id.

¶28 The court of appeals reached a similar conclusion in Air Eng'g, Inc. v. Industrial Air Power, LLC, 346 Wis. 2d 9. Industrial Air Power had a CGL policy with Acuity that provided advertising injury coverage, but also included the knowing

17

violation exclusion. Id., ¶¶1, 12, 23. Air Engineering sued Industrial Air Power alleging various causes of action based on "misappropriation and use of Air Engineering's website source code and site content and an internet advertising system[.]" Id., ¶1. Acuity argued the knowing violation exclusion in its policy eliminated any duty to defend because the complaint alleged its insured "knew the misappropriated information was confidential, misappropriated it in a willful and malicious manner," and did so to obtain business from Air Engineering's customers. Id., ¶23. Acuity pointed out that "each claim in the complaint includes an allegation of conduct that is 'willful and malicious.'" Id. The court of appeals, relying on Ross Glove Co., concluded that "an allegation of willful conduct in a complaint . . . does not destroy potential coverage" when the complaint contains a covered claim that does not require proof of a knowing violation. Air Eng'g, Inc., 346 Wis. 2d 9, ¶24. Because the complaint involved in Air Eng'g, Inc. set forth at least three "potentially covered claims that do not base liability on a showing of a knowing violation of another's rights and infliction of advertising injury," the exclusion did not remove Acuity's duty to defend its insured. Id., ¶25.

¶29 The court of appeals' analyses in Air Engineering, Inc. and Ross Glove Co. were correct. It properly compared the allegations in each complaint to the language of the exclusion. The knowing violation exclusion will preclude coverage at the duty-to-defend stage only when every claim alleged in the complaint requires the plaintiff to prove the insured acted with

18

knowledge that its actions "would violate the rights of another and would inflict 'personal and advertising injury.'" If the complaint alleges any claims that can be proven without such a showing, the insurer will be required to provide a defense.

¶30 West Bend urges us to apply the knowing violation exclusion based on the "story" this 156-page complaint tells——that Ixthus "deliberately and willfully" participated in a "fraudulent scheme." We do not base insurance coverage decisions on stories or themes. We apply the law, and applicable law in this case requires us to compare the allegations in the complaint to the words of the exclusion to ascertain whether Abbott makes any claims that do not base liability on a showing of a knowing violation of another's rights and infliction of advertising injury. See Air Eng'g, Inc., 346 Wis. 2d 9, ¶25. Unless an exclusion knocks out every pleaded claim, leaving no potentially covered advertising-injury claim for which the insured could be liable, the duty to defend remains. See generally Marks v. Houston Cas. Co., 2016 WI 53, ¶41, 369 Wis. 2d 547, 881 N.W.2d 309 (applying policy exclusions at the duty-to-defend stage will not typically relieve an insurer of its duty to defend).

¶31 A review of Abbott's ten remaining claims in the complaint quickly reveals that the complaint contains multiple claims that fall within West Bend's personal and advertising injury coverage provision and do not require proof that Ixthus acted with knowledge or with intent to violate Abbott's rights and inflict injury.

¶32 Abbott's claim for trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1)——a strict liability statute——does not require proof that Ixthus acted knowingly or intentionally. See Ross Glove Co., 344 Wis. 2d 29, ¶19. For relief under this section of the Lanham Act, Abbott need only show: (1) Abbott had a "famous mark that is distinctive"; and (2) after its mark became distinctive, the defendants commenced use of the "mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1).

¶33 Likewise, Abbott's claim for trademark dilution under New York General Business Law § 360-1 does not require Abbott to prove Ixthus acted knowingly or intentionally. Rather, Abbott must show "(1) its trademark 'is of truly distinctive quality or has acquired secondary meaning' and (2) 'there is a likelihood of dilution.'" N.Y. Gen. Bus. Law § 360-1; West Bend Mut. Ins. Co., unpublished slip op., ¶18 (quoting Johnson & Johnson v. American Nat'l Red Cross, 552 F. Supp. 2d 434, 447 (S.D.N.Y. 2008) (citation omitted)).

¶34 Both Abbott's federal and state law causes of action for trademark dilution include allegations that Ixthus infringed upon Abbott's trade dress in Ixthus' advertisements, thereby alleging covered claims for personal and advertising injury that do not require proof of knowing or intentional action on the part of Ixthus. Specifically, in paragraph 385 of the

20

complaint, Abbott alleges that "[u]sing Abbott's trademarks and trade dress, Defendants advertise to consumers and the marketplace their ability and willingness to sell FreeStyle test strips." In paragraph 585, Abbott alleges that Ixthus "utilized marks that are likely to cause dilution by blurring and/or tarnishment of Abbott's famous FreeStyle Marks and FreeStyle Trade Dress." And in paragraph 590, Abbott alleges that Ixthus and the other Defendants "have diluted and are continuing to dilute the distinctive quality of the FreeStyle Marks and FreeStyle Trade Dress, in violation of state law." Because neither cause of action requires proof of intentional conduct, the knowing violation exclusion does not apply.

¶35 Similarly, Abbott's claim alleging deceptive business practices under New York General Business Law § 349 does not require Abbott to establish "intent to defraud or mislead" to prove its case, but allows the district court to award treble damages if Abbott proves the defendants' actions were done with such intent. N.Y. Gen. Bus. Law § 349; West Bend Mut. Ins. Co., unpublished slip op., ¶19 (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 744-45 (Ct. App. N.Y. 1995)). Abbott alleges Ixthus' acts——including the use of Abbott's trade dress to advertise to consumers and the marketplace——were "materially misleading" and caused injury to Abbott, thereby falling squarely within the grant of coverage for "personal and advertising injury" claims. Because intent is not an element of this cause of action, the knowing violation exclusion does not apply.

21

¶36 Even though the complaint generally asserts Ixthus acted wrongfully and with knowledge that it was defrauding Abbott, West Bend is not relieved of its duty to defend because this complaint alleges at least one potentially covered advertising-injury claim, which does not depend on whether Ixthus acted with knowledge that it was violating Abbott's rights or with knowledge that it was inflicting advertising injury.[9] When "even one covered offense is alleged in the underlying complaint, the insurance company has a duty to defend." Ross Glove Co., 344 Wis. 2d 29, ¶19.

¶37 Despite Abbott's general allegations of knowing violations, Abbott could prevail on several covered advertising injury claims without establishing that Ixthus knowingly violated Abbott's rights. It is this possible coverage that triggers West Bend's duty to defend. "An insurer's duty to defend the insured in a third-party suit is predicated on allegations in a complaint which, if proven, would give rise to the possibility of recovery that falls under the terms and conditions of the insurance policy." Fireman's Fund Ins. Co.,

---

[9] We are not persuaded by the argument attempting to analogize this case to Talley v. Mustafa, 2018 WI 47, 381 Wis. 2d 393, 911 N.W.2d 55, Schinner v. Gundrum, 2013 WI 71, 349 Wis. 2d 529, 833 N.W.2d 685, Estate of Sustache v. American Family Mut. Ins. Co., 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845, or C.L. v. School Dist. of Menomonee Falls, 221 Wis. 2d 692, 704-05, 585 N.W.2d 826 (Ct. App. 1998). None of those cases involved analysis of whether an insurer had the duty to defend its insured under a CGL advertising-injury coverage provision.

261 Wis. 2d 4, ¶19. While a finder of fact could determine Ixthus acted knowingly, thereby relieving West Bend of its indemnification obligation under the knowing violation exclusion, the duty to defend is "broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage." Id., ¶20.

### b. Criminal Acts

¶38 West Bend also argues the criminal acts exclusion precludes coverage. West Bend contends the complaint specifically alleges some of Ixthus's acts constituted crimes, such as illegal mail, wire, and insurance fraud. The criminal acts exclusion precludes coverage for "'Personal and advertising injury' arising out of a criminal act committed by or at the direction of the insured." West Bend's policy does not define criminal act and this court has not yet decided whether a defendant must have been only charged with or actually convicted of a crime in order for the criminal acts exclusion to apply. This issue of first impression was not fully addressed in the courts below and West Bend's motion for summary judgment in the circuit court relied solely on the knowing violation exclusion. Accordingly, we decline to address it.[10]

¶39 The application of the criminal acts exclusion, however, can be resolved without deciding the issue of first

---

[10] See Lamar Co., LLC v. Country Side Rest. Inc., 2012 WI 46, ¶31 n.15, 340 Wis. 2d 335, 814 N.W.2d 159 ("As a general rule, we will not consider for the first time on appeal an issue not raised in the circuit court[.]").

impression. The complaint alleges claims that are not dependent on a showing of criminal conduct. Lanham Act violations, for example, are not criminal. "[W]hen an insurance policy provides coverage for even one claim made in a lawsuit, the insurer is obligated to defend the entire suit." Fireman's Fund Ins. Co., 261 Wis. 2d 4, ¶21. Further, allegations in the complaint are to be construed liberally in favor of the insured, and any doubts as to coverage at the duty-to-defend stage should be resolved in favor of the insured. Id., ¶20. Because claims not premised on a criminal act are alleged in the complaint, the criminal acts exclusion does not relieve West Bend of its duty to defend Ixthus.[11]

## IV. CONCLUSION

¶40 We hold the allegations in Abbott's complaint fall within the initial grant of coverage under the "personal and advertising injury liability" provision of the commercial general liability insurance policy West Bend issued to Ixthus. The claims in the complaint are sufficient to allege a causal connection between Ixthus's advertising activity and Abbott's

---

[11] The third step of the duty-to-defend analysis——evaluating whether any exceptions to the exclusions apply——is not implicated in this case and therefore will not be addressed. Because we conclude that Abbott's complaint alleges covered claims and no coverage exclusion applies to remove coverage, logically we do not consider whether an exception to any exclusion would restore coverage. Once a court determines the policy provides an initial grant of coverage, the court must consider whether any exclusions apply; if none apply, the analysis stops and the insurer has a duty to defend its insured against all of the claims asserted in the complaint.

injuries.   We further hold that neither the knowing violation nor the criminal acts exclusions apply to remove West Bend's duty to defend because the complaint alleges at least one potentially covered claim unaffected by either exclusion.   We affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶41   ANNETTE KINGSLAND ZIEGLER, J., did not participate.