COURT OF APPEALS
DECISION
DATED AND FILED

February 6, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2344**

Cir. Ct. No. **2016CV2548**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

KEVIN D. TROST AND JENNIFER M. GAGNE,

   PLAINTIFFS,

LIBERTY MUTUAL INSURANCE COMPANY,

   SUBROGATED-PLAINTIFF,

   V.

HAACK HOMESTEAD INSPECTIONS, LLC, STEVEN T. HERFEL D/B/A D&S ROOFING D/B/A DOLLARS AND SENSE CONSTRUCTION, PEKIN INSURANCE COMPANY AND TOKIO MARINE SPECIALTY INSURANCE COMPANY,

   DEFENDANTS,

RAYMOND A. WEIHOFEN AND DONNA J. WEIHOFEN,

   DEFENDANTS-APPELLANTS,

ECONOMY PREMIER ASSURANCE COMPANY,

   INTERVENOR-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Raymond and Donna Weihofen appeal an order of the Dane County Circuit Court granting summary judgment in favor of Economy Premier Assurance Company on the issue of whether Economy had a duty to defend the Weihofens against claims brought by Kevin Trost and Jennifer Gagne. Trost and Gagne purchased a house from the Weihofens.[1]  After purchasing the house, the Buyers discovered a bat infestation and water intrusion inside the house, and the Buyers brought suit against the Weihofens.[2]  The Weihofens' liability insurer, Economy, intervened in the lawsuit to request a determination by the circuit court on the issue of whether Economy has a duty to defend the Weihofens against the Buyers' claims.  The circuit court concluded that Economy does not have a duty to defend and granted Economy's motion for summary judgment.

¶2      We conclude that Economy has no duty to defend the Weihofens against the allegations in the Buyers' complaint under the liability policy that

---

[1]  For convenience, we will now refer to Trost and Gagne as "the Buyers."

[2]  The Buyers also brought a negligence claim against Haack Homestead Inspections, the company that performed a pre-purchase inspection of the home.  The Buyers' claim against Haack is not at issue in this appeal.

Economy issued to the Weihofens. Accordingly, we affirm the circuit court's order.

## BACKGROUND

¶3    The following facts are undisputed for purposes of this appeal.

¶4    The Buyers purchased a house from the Weihofens in November 2014. Before the sale of their house, the Weihofens executed a Real Estate Condition Report. The report stated that the Weihofens were not aware of "defects in the roof," "water or moisture intrusions," or "other defects affecting the property." The report was provided to the Buyers. After the Buyers moved into the house, they discovered that the home had a bat infestation and water intrusion.

¶5    The Buyers brought suit against the Weihofens. The Buyers' complaint asserted three separate misrepresentation claims against the Weihofens relating to statements made by the Weihofens in the Real Estate Condition Report. The Buyers also asserted claims for breach of warranty and negligence against Steven Herfel relating to Herfel's installation of a new roof on the Weihofens' house seven years before the Weihofens sold the house to the Buyers.

¶6    From June 1, 2014, to June 1, 2015, the Weihofens were insured under a personal liability policy issued by Economy.[3] The policy provided the following pertinent liability coverage, identifying the Weihofens as "you":

> **Legal Liability Protection.**   Under the liability
> section of this policy you're covered when someone makes
> a claim against you.   We'll cover your legal liability

---

[3] For convenience, we will refer to the insurance policy issued by Economy as "the policy."

resulting from an occurrence in which there is actual accidental property damage … subject to the limitations and exclusions in [the policy]. By occurrence, we mean an event, including continuous or repeated exposure to the same conditions, resulting in … property damage neither expected nor intended by anyone insured by [the policy].

….

"Property damage" is damage to someone else's property or its loss or destruction and also the loss of its use….

The policy also provided the following regarding a duty to defend:

We'll pay for the cost of your defense, including investigation, lawyer's fees and court costs when someone make a covered claim against anyone insured under this policy.

¶7     Initially, the Weihofens retained their own counsel to represent them in the Buyers' lawsuit but, in February 2017, the Weihofens notified Economy that the Weihofens were "tendering defense" of the suit to Economy. Economy did not provide a defense to the Weihofens. Rather, Economy intervened in the Buyers' lawsuit for the purpose of seeking a declaration of Economy's duties under the policy. The Weihofens and Economy filed cross-motions for summary judgment on the issue of Economy's duty to defend. The circuit court granted summary judgment in favor of Economy, concluding that Economy did not have a duty to defend the Weihofens under the policy, and the Weihofens appeal.

¶8     We will mention other material facts in the discussion that follows.

## DISCUSSION

¶9     The Weihofens argue that the circuit court erred in concluding that Economy did not have a duty to defend the Weihofens under the terms of the policy. For the reasons that follow, we reject the Weihofens' arguments.

4

## I. Standard of Review and Governing Principles Regarding the Interpretation of Insurance Contracts and an Insurer's Duty to Defend.

### A. Standard of Review.

¶10 Economy's request for declaratory relief presents a question of law and turns upon the interpretation of the policy in light of relevant facts. *See* ***Olson v. Farrar***, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1. We review questions of law *de novo*. ***Id.***

¶11 We likewise review *de novo* the circuit court's entry of summary judgment, applying the same methodology as the circuit court. ***Cole v. Hubanks***, 2004 WI 74, ¶5, 272 Wis. 2d 539, 681 N.W.2d 147. Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[4] Here, Economy is the moving party and, as such, "bears the burden of establishing the absence of a genuine, that is, disputed, issue of material fact." ***Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC***, 2018 WI 112, ¶80, 384 Wis. 2d 669, 920 N.W.2d 767. We review summary judgment materials "in the light most favorable to the non-moving party," here the Weihofens. ***Id.***

### B. Interpretation of Insurance Policies.

¶12 In this appeal, we must interpret provisions of the policy. The objective in interpreting an insurance policy is to ascertain the intention of the

---

[4] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

parties. *Paper Mach. Corp. v. Nelson Foundry Co., Inc.*, 108 Wis. 2d 614, 620, 323 N.W.2d 160 (Ct. App. 1982). Language in an insurance policy is given its common and ordinary meaning. *Kremers-Urban Co. v. American Emp'rs Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). Insurance policies are thus interpreted based on "what a reasonable person in the position of the insured would have understood the words to mean." *Id.*

## C. Duty to Defend.

¶13 Insurance policies, such as the policy Economy issued to the Weihofens, are contracts that establish an insurer's "duty to indemnify the insured against damages or losses, and the duty to defend against claims for damages." *Water Well Sols. Serv. Grp. Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶14, 369 Wis. 2d 607, 881 N.W.2d 285 (quoting *Olson*, 338 Wis. 2d 215, ¶27).

¶14 The "duty to defend" is "the insurer's 'responsibility to defend the insured from all actions brought against the insured based on alleged facts or circumstances falling within the purview of coverage under the policy, regardless of the suit's validity or invalidity.'" *Marks v. Houston Cas. Co.*, 2016 WI 53, ¶37, 369 Wis. 2d 547, 881 N.W.2d 309 (quoting 14 Steven Plitt et al., *Couch on Insurance* § 200.1 (3d ed. 2015)). In considering whether an insurer has a duty to defend, we compare "the four corners of the underlying complaint to the terms of the entire insurance policy." *Water Well*, 369 Wis. 2d 607, ¶15.

¶15 The three-step process in duty-to-defend cases is as follows:

> (1) "First, a reviewing court determines whether the policy language grants initial coverage for the allegations set forth in the complaint. If the allegations set forth in the complaint do not fall within an initial grant of coverage, the inquiry ends."

(2) Second, "if the allegations fall within an initial grant of coverage, the court next considers whether any coverage exclusions in the policy apply."

(3) Third, "[i]f any exclusion applies, the court next considers whether an exception to the exclusion applies to restore coverage."

***West Bend Mutual Ins. Co. v. Ixthus Medical Supply, Inc.***, 2019 WI 19, ¶11, 385 Wis. 2d 580, 923 N.W.2d 550 (quoting ***Water Well***, 369 Wis. 2d 607, ¶16).

## II.  The Policy Did Not Make an Initial Grant of Coverage.

¶16     As noted, an insurer's duty defend is determined by comparing the relevant allegations in the Buyers' complaint to pertinent provisions of the policy. *See **Water Well***, 369 Wis. 2d 607, ¶15.  We now set forth portions of the Buyers' complaint and the policy.

### A.  The Buyers' Complaint.

¶17     The following are the pertinent portions of the allegations in the Buyers' complaint:

19. [After the buyers purchased the house, they] noticed that many moderate to heavy rains resulted in the intrusion of water into a portion of the basement underneath the sunroom.…

20. [After the Buyers purchased the house, they] discovered [that] the attic of the House was the residence of multiple bats.…

21. A bat exclusion contractor subsequently advised that there were multiple locations along the roofline that were missing standard flashing and left openings through which bats could easily access the attic.... He also observed the presence of metal mesh from someone's prior attempt to exclude bats from the attic.

.…

7

26. It was discovered that multiple locations on the roof had excessive amounts of tar and/or caulk at various junctions where someone had previously made an improper attempt to address chronic water leakage….

….

38. Herfel and his employees failed to meet these obligations and duties by failing to properly install flashing during the roofing process, failing to properly install roof vents, and tarpapering over and nailing through and walking on the gutters and gutter helmet during the roofing process.

39. As a result of Herfel and his employees' failure to meet the required standard of care, the [Buyers] have sustained damages including, but not limited to, water damage to the structure of the House, bat intrusion and habitation in the attic, and the cost of repair and replacement of the roof, gutters, and gutter helmet.

….

49. … [The Weihofens] completed a real estate condition report for the House and provided [the] report to … [the Buyers]….

50. The real estate condition report disclosed that [the Weihofens] were unaware of any problems with the roof, any problems with water intrusion into the house or basement, any problems with drainage, or any problems with pests.

51. The representations in the real estate condition report were made based on facts of the Weihofens' own knowledge or where they should have known the truth or untruth of the representations.

52. Said representations contained in the real estate condition report were untrue. [The Weihofens] tarred and/or caulked various areas of the less than seven year old roof in an improper attempt to correct leakage. They cut open a gutter cover in an attempt to address poor gutter functioning. They painted over areas of water damage in an effort to conceal them from prospective purchasers…. They installed metal exclusion mesh in the attic and expandable foam sealant around the chimney in an effort to exclude bats from the attic.

….

54. [The Buyers] believed the representations contained in the real estate condition report to be true and relied upon them to their detriment incurring actual and consequential damages.

....

56. The representations contained in the real estate condition report … were untrue, deceptive, or misleading and were made … [to the Buyers] with an intent to induce them to enter into a contract for the purchase of the House.

....

58. As a result of the untrue, deceptive, or misleading statements contained in the real estate condition report, [the Buyers] have sustained pecuniary loss.

....

61. Knowing the falsity of the representations about the roof, gutters, water intrusion, and pests in the real estate condition report, [the Weihofens] intended to deceive and defraud prospective purchasers into buying the House.

62. [The Buyers], relying upon the information contained in the real estate condition report, acted to their detriment and sustained actual damages, costs of investigation, including attorneys' fees and costs.

## B. Applicable Policy Provisions.

¶18    We now repeat the applicable provisions of the policy:

Under the liability section of this policy *you're covered when someone makes a claim against you.* We'll cover *your legal liability resulting from an occurrence* in which there is actual accidental *property damage* … subject to the limitations and exclusions in [the policy]. By occurrence, we mean an event, including continuous or repeated exposure to the same conditions, resulting in … property damage neither expected nor intended by anyone insured by [the policy].

....

> "Property damage" is damage to someone else's property or its loss or destruction and also the loss of its use.

(Emphasis added.)

## C. Analysis.

¶19     Given the terms of the policy, the parties do not dispute that, for there to be an initial grant of coverage, the complaint must allege that the Weihofens' conduct resulted in "property damage."[5]  There is also no dispute that the complaint alleges that misrepresentations of the Weihofens caused damages to the Buyers.  Economy asserts that the Buyers' complaint did not trigger an initial grant of coverage because the complaint does not allege that the Weihofens' misrepresentations caused *property damage*.  As stated by Economy, there is no initial grant of coverage because there is no allegation in the complaint "that the Weihofens' misrepresentations," or any other action on their part, "*caused* the defective conditions in the house about which the [Buyers] complain."[6]

¶20     The Weihofens do not argue to this court that the complaint alleges that their misrepresentations caused property damage.  Rather, the Weihofens argue that an initial grant of coverage is triggered because the complaint alleges

---

[5] The complete phrase in the policy regarding property damage is "actual accidental property damage."  However, whether the property damage was "actual" or "accidental" is not germane to our analysis, and we can ignore those terms.

[6] Economy also contends that the Buyers' complaint did not trigger an initial grant of coverage because the Weihofens' legal liability stems from the Weihofens' misrepresentations, and those misrepresentations are not an "occurrence" under the policy in as much as those misrepresentations were not accidental.  We do not reach this issue because we resolve the duty to defend issue on another ground.  *See Cholvin v. Wisconsin Dep't of Health and Family Servs.*, 2008 WI App 127, ¶34, 313 Wis. 2d 749, 758 N.W.2d 118 (stating that, if a decision on one point disposes of the appeal, we will not decide other issues raised).

that the Weihofens' conduct *other than* the misrepresentations caused property damage. The Weihofens point to four purported bases to support their argument, and we reject each.

¶21 First, the Weihofens argue that allegations in paragraphs 26 and 52 of the complaint that the Weihofens "tarred and/or caulked various areas of the … roof in an improper attempt to correct leakage" into the house is an allegation of conduct resulting in property damage. However, the Weihofens point to no allegation in those paragraphs, or anywhere else in the complaint, which gives rise to a reasonable inference that conduct of the Weihofens, such as attempts to correct the leakage, caused damage or increased damage to the house. In other words, there is nothing in the complaint alleging that the Weihofens' attempt to correct leakage caused "property damage."

¶22 Second, the Weihofens contend that an allegation in paragraph 52 of the complaint that the Weihofens "cut open a gutter cover in an attempt to address poor gutter functioning" is an allegation of conduct resulting in property damage. However, the Weihofens point to no allegation in paragraph 52, or anywhere else in the complaint, stating that the opening of the gutter cover caused any property damage or made any property damage worse than it would have been otherwise. In fact, paragraphs 38 and 39 are the only portions of the complaint (quoted above) that allege any damage to, or resulting from, the gutters, and those paragraphs allege that such damage was caused by Herfel.

¶23 Third, the Weihofens contend that an allegation in paragraph 52 of the complaint that the Weihofens "installed metal exclusion mesh in the attic and expandable foam sealant around the chimney in an effort to exclude bats from the attic" is an allegation of conduct resulting in property damage. Once again,

however, the Weihofens point to no allegation in paragraph 52, or anywhere else in the complaint, that there would have been no, or fewer, bats in the attic of the house if the Weihofens had not installed the mesh or the expandable foam sealant. As a result, that allegation does not state that conduct of the Weihofens caused property damage.

¶24 Fourth, the Weihofens point to what they describe as allegations that they "[h]ired and paid for defective roofing work [by Herfel] that resulted in ongoing water infiltration." Economy argues that there is no claim against the Weihofens, or facts alleged against them in the complaint, that the Weihofens are liable for the defective roofing work done by Herfel. In reply, the Weihofens do not dispute that there is no claim against them for negligent hiring or negligent supervision of Herfel. Instead, the Weihofens argue that they "were potentially liable" for negligent hiring or supervision of Herfel based on Herfel's work on the house. We see no viable argument from the Weihofens that a claim that is not in the complaint and is only a "potential" liability against the Weihofens can be the basis for an initial grant of coverage. There must be a claim for damages against the insured for the duty to defend to arise. *Id.*, ¶¶15, 17 ("This is because the four-corners rule dictates that the duty to defend is determined by 'the nature of the claim alleged against the insured ... even though the suit may be groundless, false or fraudulent.'" (quoted source omitted)). In addition, the policy notes that, for there to be coverage, there must be a "claim" made against the Weihofens. We are aware of no authority that requires Economy to defend a claim not made in the complaint.

¶25 In short, the allegations in the complaint do not connect any alleged conduct of the Weihofens to any property damage. Accordingly, we conclude that

the conduct pointed to by the Weihofens did not trigger an initial grant of coverage and, accordingly, Economy has no duty to defend.

¶26   The Weihofens present this court with an alternative argument on why the allegations in the complaint sufficiently alleged a causal connection between the Weihofens' conduct and property damage.  Specifically, they argue that a connection is established by allegations in the complaint that the Buyers' insurer, Liberty Mutual, "made a partial payment towards repair of … drywall" that "contained an elevated amount of moisture" and that Liberty Mutual "therefore maintains a subrogated interest for recovery of its amounts paid towards the repair of these damages."  This argument collapses upon examination.  Nothing in the complaint alleges that Liberty Mutual has made a claim against the Weihofens.  Only Liberty Mutual can make its subrogated interest claim against the Weihofens, and there is nothing within the four corners of the complaint to show that Liberty Mutual has ever demanded subrogation against the Weihofens.  Accordingly, we reject this argument.

¶27   In summary, the allegations in the complaint do not establish that any conduct by the Weihofens caused property damage.  Accordingly, we conclude that an initial grant of coverage was not triggered under the policy.[7] Therefore, Economy has no duty to defend the Weihofens against the Buyers' claims.

---

[7] Because our conclusion regarding the duty to defend is dispositive, we do not reach the Weihofens' arguments that Economy breached its contract with them and that Economy is liable to the Weihofens for damages.  *See **id.*** (stating that if a decision on one point disposes of the appeal, we will not decide other issues raised).

## CONCLUSION

¶28    For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.